ROBSON v. COMMISSIONER OF STATE LAND OFFICE.

PUBLIC LANDS—STATE SWAMP LANDS—SELECTION—LIMITATIONS—
LACHES.
  The right of Houghton county or its assignee to select swamp
    lands earned by the county under Act No. 239, Laws of 1863,
    is not affected by laches or lapse of time. BLAIR, J., and
    McALVAY, C. J., dissenting

Mandamus by Frank E. Robson to compel William H.
Rose, commissioner of the State Land office, to issue a
patent for certain swamp lands. Submitted February 15,
1906. (Docket No. 225.) Writ granted April 30, 1907.

*Robson, George & Fisher,* for relator.

*John E. Bird,* Attorney General (*Lincoln Avery* and
*Grant Fellows,* of counsel), for respondent.

HOOKER, J. Section 1, Act No. 239, Laws of 1863,
provides "that for the purpose of securing the comple-
tion" of a "State road," therein named and described,
"there shall be and hereby is appropriated to the counties
of Houghton * * * 1,280 acres of swamp lands per
each mile on said road, to be expended under the author-
ity and by the direction of the board of supervisors,
* * * the patents for * * * said lands to be
* * * issued to said county on the satisfactory com-
pletion of said road, as hereinafter specified." Section
2 prescribes the powers and duties of the board of super-
visors in the premises. Section 3 provides for notice to
the commissioner of the State land office of the comple-
tion and approval by the board of supervisors of any 10
consecutive miles of said road, and for the issue to said
county of patents for 20 sections of said land, the same to
be selected by the board. Section 5 provides that the road
shall be completed within four years from the passage of

the act.   Sections 6, 7, and 8 provide for the raising by tax the necessary funds to construct the road.   Section 9 provides for the issue of patents on completion of the road, and that the lands so patented shall be under the control of the board of supervisors, who shall fix the minimum price per acre, the manner of sale, and authorize the county clerk to issue patents to any persons who should pay to the county treasurer the amount of money due for any of said lands.   Section 4 provides that, after selection by the county, said lands shall be withheld from sale for four years from the passage of the act, and this period was extended six years from the passage of the amendatory act.   See Act No. 65, Laws of 1865.

On June 23, 1863, the board of supervisors made selection of all the lands and filed the lists with the commissioner.   Notice of completion was filed January 25, 1871.   On December 27, 1871, Houghton county withdrew from consideration all lands contained in the lists filed in 1863 for which patents had not issued.   Relator's counsel ascribe this action to the fact that many of such lands had been sold.   See *People, ex rel. County of Houghton,* v. *Commissioner of State Land Office,* 23 Mich. 270, 277. Counsel agree that there was a large quantity of land to which it was entitled for which patents had not issued, at that time, some of which has been patented to the relator or his assignors since.   The relator is the assignee of the county of Houghton, which, having completed and paid for the road with taxes raised in accordance with the act, has sold its right to lands not patented, amounting to 1,883 acres, and, so far as we can discover, the county has made no objection to relator's claim, even if it is in a situation to do so, which we need not and do not decide. So the case is not different than it would be were Houghton county making this application, and the commissioner refusing to issue patents to it, upon the ground that it had lost its right to them through lapse of time.   In short, the case may be stated as follows:

1. The State, for the purpose of internal improvement,

"appropriated to the county of Houghton," upon which it imposed the duty of building and paying for the improvement, certain lands (not designated), in a class known as "State swamp lands," granted to it for such purposes by the Federal government.

2. The county assigned its right to the land including the right of selection after it accrued and the relator has acquired it.

3. The land commissioner refuses to recognize relator's right to such land, after its selection by him and declines to issue patents, and we are asked to compel him to issue such patents.

Counsel for respondent concede in their brief that Act No. 239, Laws of 1863, was a grant. They say that it "constituted a floating grant" to the county of Houghton, and they say that "upon selection the rights of relator's grantor became fixed, his title perfect, and his right of possession complete." Selection "was an act required of Houghton county or its assignees, and, when performed, the grant attached itself to particular parcels of land selected, and in this way they became segregated from the great body of similar lands in the Upper Peninsula belonging to the State. * * * The patent is not necessary to vest a title in Houghton county. It was [would be] evidence of title in Houghton county. * * * This being true, and the title already being vested in Houghton county, on making selection after a completion, acceptance, and notification of such acceptance of the road, it follows that the right of said Houghton county or its assignees to bring an action to recover possession of these lands was complete, and, being complete, the statute of limitations commenced to run when such selections could have been made, viz., January 25, 1871," the date of approval, etc.

The land in controversy was granted to the State for purposes mentioned in the grant. Its appropriation was in furtherance of the purpose, and the county has attempted to apply it to such purpose, in accordance with the duty imposed upon the State by the United States in the statute making the State swamp land grant of 1850.

This proceeding does not involve a contract merely between the State and one of its municipal subdivisions. If it has not by a grant in præsenti conveyed an, interest in these lands subject to a condition subsequent, viz., selection and performance of the duty imposed, it has at least appropriated to the purpose specified certain lands, directing a patent to issue upon performance of the conditions imposed. We are aware of no instance where a statute has been passed to cut off rights of municipalities growing out of transactions with the State, and it has not been the policy of this State to either surrender to or yield to municipalities claims between them, because of lapse of time or laches. No one has ever supposed that the accounts or claims between the State and counties were within the statutes of limitations, and they have sometimes been adjusted long after they accrued and became due. We are not aware that it has been the practice of the Federal government or the State to repudiate its obligations to land purchasers who have been satisfied with land certificates upon which alone the title to thousands of acres of wild land in Michigan and other States and Territories has rested for many years. Patents have always been issued on presentation of the certificates by the person entitled to them. Land warrants issued as a bounty to soldiers of our several wars were never repudiated, so far as we can ascertain, and the same is true of money bounties, which have been paid long after they were earned by the Federal government and by this State. See *Smith* v. *Auditor General*, 80 Mich. 205. The impropriety and injustice of such treatment of its citizens by a government is obvious, and it is stated in *Smith* v. *Auditor General*, supra.

Obviously, counsel do not deny that the statute was a grant in præsenti of a right which, when made applicable to particular lands by performance of conditions and selections, would have the effect to vest a complete and perfect title. Their claim seems to be that, until selection is made, title does not vest, and that, if after the right to select

accrued the selection was not made before the expiration of the period within which an action to recover the possession of lands may be barred under the statute, the right may be treated by the State as abandoned, and the land otherwise disposed of, and the following quotation from 26 Am. & Eng. Enc. Law (2d Ed.), p. 221, is apparently cited in support of such claim:

" The right to acquire land, once vested and attached to a particular tract, is as effective as a grant in segregating the land from the public domain. The tract cannot be disposed of by the government unless the equity is subsequently lost by abandonment, cancellation, or the like; and on the grant passing it relates back to the initiation of the right, cutting off all intervening claims."

We have examined the cases cited in support of the text—which at best is a negative statement of the proposition—and we find that most of them had application to disputed claims arising between private persons, and not one suggests that the land commissioner is justified in treating equitable rights under land warrants, entries, or legislative grants as abandoned because patents are not applied for or surveys or other locations made within the statutory period fixed for limitation of action for recovery of possession, while we may take judicial notice that a distinctly contrary practice has uniformly prevailed.

In *Ross* v. *Doe*, 1 Pet. (U. S.) 655, a right under a donation certificate was recognized long after its date. It has been common to recognize appropriations of land, regardless of lapse of time, even as against subsequent appropriation of the same land. See *U. S.* v. *Fitzgerald*, 15 Pet. (U. S.) 407.

In *Stark* v. *Starrs*, 6 Wall. (U. S.) 402, it was held:

" The right to a patent once vested is equivalent, as respects the government dealing with the public lands, to a patent issued. When issued, the patent * * * relates back to the inception of the right of the patentee."

*Simmons* v. *Wagner*, 101 U. S. 260; *Cornelius* v. *Kessel*, 128 U. S. 457; *Benson Mining & Smelting Co.*

v. *Alta Mining & Smelting Co.*, 145 U. S. 428.   See 26
Am. & Eng. Enc. Law (2d Ed.), pp. 272*bb*, 295, 296*f*,
297*h*, 317*g*.

To the suggestion that abandonment, cancellation, for-
feiture, or the like would justify such action, we may say
that here is neither cancellation nor forfeiture.   In the
case of *Lessee of Holtzapple* v. *Phillibaum*, 4 Wash.
C. C. (U. S.) 363, it was said:

"We understand an abandonment to be a voluntary
relinquishment of a man's equitable right to land, thereby
leaving it vacant and open to future appropriation by
others, who should be inclined to take it up."

There has been no voluntary relinquishment.   On the
contrary, it is conceded that a former mandamus was
asked for and granted as early as 1872, and that patents
were issued upon this claim in 1865, 1894, and 1900.   In
*Hoffman* v. *Bell*, 61 Pa. 444, 454, it was held that a war-
rant and survey, returned and accepted, on which the
purchase money has been paid, confers a perfect title
against all the world, but the commonwealth, which has
itself the legal title only as security for the patenting fees.
See, also, *Witherspoon* v. *Duncan*, 4 Wall. (U. S.) 210;
*Hastings, etc., R. Co.* v. *Whitney*, 132 U. S. 357.
There is a close analogy between the right of the State to
swamp lands previous to selection and the right of Hough-
ton county after the completion and acceptance of this
road and before selection of all lands.   The Federal gov-
ernment has always recognized its obligation to admit the
State's inchoate right, and, as already shown, the State
has hitherto recognized its obligation to admit the relator's
right to patents upon selection.   There is no more appar-
ent reason for the assertion of the statute of limitations,
after payment for a floating grant, before selection, than
there would be after selection, and no more justification
for repudiating a government obligation in either case
than in denying selection upon an outstanding bounty
warrant, or a patent upon a land entry.   The difference
between the two cases is at best a technical one.   What-

ever may be thought of the effect of the statute of limitation upon money claims against the State, it has no application to such cases as this. We are of the opinion that the legislature has recognized a continuous right of selection without reference to time. Act No. 97, Laws of 1869, § 3 (1 Comp. Laws, § 1499), provides:

" All swamp land scrip known as ' general scrip,' shall be received in payment of all lands sold under the provisions of this act."

The State of the credit on account of the grant to Houghton county has been tabulated, and an examination of the reports will show the net amount outstanding from year to year, after deducting the acreage, selected from time to time. This must have been known to the legislature, yet it has taken no action indicating a design to cut off the right of selection, or to terminate the ministerial duty of the commissioner to issue patents as required by law, or to confer upon him a discretion to disregard his statutory duty, when his notions of the interest of the State requires it. In *Olds* v. *Commissioner of State Land Office*, 134 Mich. 442, decided in 1903, the validity of "special or local scrip" carried in 1867, delocalized in 1887, was recognized, and its acceptance enforced by mandamus. A similar practice has prevailed at Washington. In the "Public Domain" issued under the authority of congress, a table appears showing location of warrants in 1884, under acts granting land as early as 1847, and the commissioner of the general land office in the year 1904, gives a similar table, showing the condition at that time of the different grants. The lands in controversy were granted to the State in trust, and, while the Federal government will not inquire concerning the disposition made of the lands, the State is charged with the trust and presumably holds and disposes of the lands in furtherance of the object for which they were granted. Until it, through the legislature, signifies its policy to be that it shall refuse to perform its equitable obligations as to this land incurred in the discharge of its trust, we

should not assume such an intention, or apply to them the general statute of limitations.

Some significance and importance is attached to the argument that the relator has delayed selection for many years, until lands have become valuable, whereby he has avoided the payment of taxes and prevented the taxation of lands which he might have selected. There has been nothing to prevent the sale of these lands during that time from which we may infer that they have not been in demand. There is no evidence that they are especially valuable now, and we are aware of no rule justifying the assumption that the land scrip has not been regularly taxed, but whatever the facts may be, and however cogent such reflections may be as an argument in support of legislative action in the premises, had any been taken, they are not a sufficient ground for judicial confiscation. Some language in the case of *Olds* v. *Commissioner of State Land Office*, 134 Mich. 454, is pertinent in this connection.

The writ should issue as prayed.

CARPENTER, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred with HOOKER, J.

BLAIR, J. (*dissenting*). The State legislature in 1863 (Act No. 239), appropriated to the counties of Houghton and Keweenaw swamp lands situated in the upper peninsula to the amount of 1,280 acres per mile for the construction of the "Mineral Range State Road," so called. This road was to be constructed under the direction of the board of supervisors of these counties respectively. The act provided:

"SEC. 4. There shall be withheld from sale, not exceeding 1280 [acres] of the swamp lands in the Upper Peninsula (not otherwise appropriated) for each mile of said road from and after the time said counties through which said road runs shall notify the commissioner of the State land office of the selection of the same, and said lands shall be so withheld from sale for the period of four years from the passage of this act."

In 1865 (Act No. 65) the legislature amended this act, providing that said lands should be withheld from sale for the period of six years from and after the passage of such amendatory act, also extended the time for the completion of the road a like period of time, namely, six years. The appropriation provided for in the original act, namely, Act No. 239, Laws of 1863, was accepted by the board of supervisors of Houghton county on the 21st day of April, 1863. Pursuant to section 4 of said act, Houghton county made its selection on and prior to June 23, 1863, of all the lands it would be entitled to under its contract. Such selections were contained in two formal lists filed with the commissioner of the State land office. That portion of this road lying within Houghton county was completed within the time provided for in the foregoing acts, and notice of such completion and of the acceptance of the road by the board of supervisors of said county was filed with the commissioner of the State land office on the 25th day of January, 1871. On December 27, 1871, Houghton county withdrew from the consideration of the State land office all of the lands contained in the lists filed with said commissioner in 1863 for which patents had not been issued, and filed new lists, under which it had received by October 12, 1872, all but 3,000 acres of the lands to which it was entitled. Relator, through various transfers, is the assignee of the county of Houghton, and, as such, claims that there is still due from the State, 1,883 acres of State swamp land in the upper peninsula not otherwise appropriated. He applied for a patent for the lands described in the petition on September 13, 1905, and the commissioner of the State land office refused to issue the same. He now seeks, by mandamus, to compel the issuance of a patent to him of these lands, and the writ is resisted by the State for the reason that the statute of limitations has run against any right relator or his assignor had to these lands.

Counsel for relator contends that the defense of the statute of limitations is untenable, because:

"(1) In making the grant to Houghton county the State was carrying out the trust created by the act of congress of September 28, 1850, granting swamp lands to the State, which act imposed upon the State the duty of devoting the lands or their proceeds, as far as necessary, to the purpose of reclaiming the swamp lands, and to this extent was a trust sanctioned by the good faith of the State.

"(2) The statutes of limitation have no application to acts of the legislature disposing of the swamp lands granted by the act of congress.

"(3) Statutes of limitations are not applicable to the State unless the legislature has clearly manifested its intention to include the state therein. The general statutes of limitations do not expressly include the State, and that the State is not to be included by inference is shown by the statutory provisions defining the extent to which they shall be applicable to the State, as in sections 9724, 9747, 3 Comp. Laws.

"(4) The case at bar is not within the terms of the particular statute of limitations invoked by respondent—section 9714, 3 Comp. Laws."

1. Whether the swamp land grants created trusts, the nature thereof, and the duty of the State thereunder are questions which concern the State and Federal governments alone. Such trusts and duties cannot be enforced against the State by private parties, and cannot therefore affect the operation of statutes of limitation otherwise applicable. *A. P. Cook Co.* v. *Auditor General,* 79 Mich. 100; *County of Mills* v. *Railroad Cos.,* 107 U. S. 557.

3. It would be a harsh rule which should deny to the State the benefits of statutes of limitations to the burden of which it had expressly subjected itself. The fact that the State has subjected itself to such statutes furnishes no argument against the right of the State to invoke their protection, but rather implies that right as abandoning its unquestioned prerogatives and placing itself upon the same plane with private suitors. The weight of authority supports the contention of respondent's counsel that general statutes of limitation, where applicable, may be relied upon by the State, although not specifically referred to in

them. *Baxter* v. *State*, 10 Wis. 454, 17 Wis. 588; *Stanley* v. *Schwalby*, 147 U. S. 508; *Cowles* v. *State*, 115 N. C. 173; *Auditor* v. *Halbert*, 78 Ky. 577; *Hepburn's Case*, 3 Bland's Ch. (Md.) 94; *McRae* v. *Auditor General*, 146 Mich. 594.

2 and 4. Is there any existing statute of limitations applicable to this proceeding? Counsel for the State contend that section 9714, 3 Comp. Laws, applies. Counsel for both parties agree that the legislative grant, its acceptance by the county, and the completion of the road constituted an executed contract by virtue of which the county acquired a vested right to select the specified acreage. It is also agreed that the right conferred upon Houghton county was a mere "float," which granted no interest in any particular parcel of land until a selection thereof had been made under the statute; and it is contended by relator that until the county received a patent "it had no right of entry, and, until it received such patent, its right of action had not accrued." On the other hand, it is argued by respondent's counsel that a selection of lands confers title. " The patent is not necessary to vest a title in Houghton county. It was evidence of title but not the title itself." It was held by this court in *People, ex rel. County of Houghton,* v. *Commissioner of State Land Office*, 23 Mich. 270, where the rights of Houghton county under the legislation in question were considered, that sales made to others of lands which had been regularly selected by the county or for which patents had been demanded were invalid, and the county was entitled to patents therefor. And it was held in *People* v. *Warner*, 116 Mich. 228, and *State* v. *Fishing & Shooting Club*, 127 Mich. 580, that the State had sufficient title under the swamp land act to maintain ejectment when the lands granted were properly identified, although prior to such identification its right of entry was suspended. See, also, *Sjoli* v. *Dreschel*, 199 U. S. 564. A proper selection of particular lands would, therefore, anchor the float, and confer upon the person selecting an

interest in them, of which he could not be divested and which he could enforce against the world.

No selection, however, was made of the lands in question here, and the question arises: Was the uncontrollable right to make a selection sufficient to put the statute of limitations in operation?  Respondent claims that as the State could not determine what descriptions of the lands should be patented to Houghton county, but the particular tracts to be conveyed must be determined solely by the act of the county in selecting them, when the right of selection became complete, the statute of limitations began to run.  In support of their contention, counsel for respondent cite *Hintrager* v. *Traut*, 69 Iowa, 746; *Baxter* v. *State*, 17 Wis. 588; *Prescott* v. *Gonser*, 34 Iowa, 175, and other cases.

In *Hintrager* v. *Traut* the action was mandamus to compel the city treasurer to execute a tax deed for a certain lot sold for delinquent city taxes.  The city ordinance under which the sale was made provided that at the expiration of two years and nine months after a sale a purchaser may give notice to the landowner of the expiration of the time for redemption, and 90 days after the service of such notice the treasurer is authorized to execute a deed.  The court say:

"(2) The question presented by the demurrer which we shall consider and determine is this:  Was the action barred by the statute of limitations?  It will be observed that plaintiff could have given notice of the expiration of the time for redemption, March 12, 1879, which was two years and nine months after the sale.  June 12, 1879, had the notice been given, plaintiff would have been entitled to a tax deed.  This suit was commenced June 16, 1884.  Counsel for plaintiff concede that the action of mandamus is barred in three years after the cause thereof accrues.  When did plaintiff's cause of action accrue ?  Under the city ordinance he could have been entitled to a deed June 12, 1879.  His right thereto at that time depended upon his own action.  His right was complete to a deed, so far as all acts and proceedings were concerned, except his own act, over which he had control.  The law, as it were, of-

fered him the deed at the time, but he would not stretch forth his hand to receive it. Under more than one decision of this court his cause of action then accrued, and from that date did the statute of limitations begin to run. See *Baker* v. *County of Johnson*, 33 Iowa, 154; *Prescott* v. *Gonser*, 34 Iowa, 175; *Ball* v. *Railway Co.*, 62 Iowa, 751; *Hintrager* v. *Hennesy*, 46 Iowa, 600."

In *Freeman* v. *Ingerson*, 143 Mich. 7, we held:

" Where a demand is necessary to create a cause of action, such demand must be made within a reasonable time, which, by analogy to the statute of limitation, will be deemed to be six years."

But the right of the State to rely upon the ordinary statutes of limitation will not avail the State unless there is some statute which might be pleaded as a defense if the suit were between private parties. If the contract conceded in this suit were between private parties, the remedy of the purchaser would be by bill for specific performance if he wished to obtain a deed of the land, and the statute relied upon by respondent would present no obstacle to such a suit.

It is contended, however, on the part of the respondent that, even though there be no statute of limitations barring the action, the laches of relator has been so great that he ought not to be granted the relief sought. The general rule undoubtedly is, as contended by relator, that mere delay would not defeat the right to have performance of the contract as between private individuals. 3 Pomeroy on Equity Jurisprudence (2d Ed.), § 1408. But, as said by Justice COOLEY in rendering the decision of the court in *Smith* v. *Lawrence*, 15 Mich. 499:

" The specific performance of contracts must always rest in the sound discretion of the court; to be decreed or not as shall seem just and equitable under the peculiar circumstances of each case. It is frequently ordered in favor of a party who has been for a considerable period in default, if he has never abandoned the contract, and the other party has suffered nothing from the delay for which he cannot be compensated in the decree. If, however, succeeding the default, there has been a considerable

change in the value of the property, this may be reason sufficient for denying the specific relief, inasmuch as the contract would thereby become an unequal one, and to enforce it would be to encourage delays by enabling the party to take advantage of changes in his favor, though he might have delayed performance intentionally and not meaning to perform unless favorable changes should occur."

I think that this court, in the absence of evidence to the contrary, should presume that swamp lands, as well as other lands in the Upper Peninsula, have increased in value in the period between 1872 and 1905. At all events, in my opinion the relator to entitle himself to the discretionary writ of mandamus, has the burden of showing that there has been no material increase in the value of the lands which he now seeks to have patented to him. Furthermore, the State has suffered loss through not receiving taxes upon these lands, as it would have if they had been selected within a reasonable time, as, in my judgment, it was intended that they should be. Act No. 101, Laws of 1869, strongly indicates such intention. Sections 1 and 2 of the act are as follows:

"SECTION 1. *The People of the State of Michigan enact,* That whenever any person of [or] persons shall be entitled to State swamp lands, by reason of the performance of any labor, or the fulfillment of any contract, it shall be the duty of the commissioner of the State land office to cause to be issued such patents, and deliver the same to the person or persons entitled thereto, if applied for at the State land office; and in case no such application is made within thirty days from the time such person or persons shall be entitled to such swamp lands (then, in such case), the said commissioner shall file such patent or patents in his office, subject to the order of the person or persons entitled to the same.

"SEC. 2. It shall be the duty of such commissioner to furnish to the several county treasurers, in each year, and in time for assessment, a list of all such lands so patented, according to the provisions of section one of this act; and such lands so patented, shall be subject to assessment and taxation as other assessable and taxable lands. Lists of all lands now subject to be so patented, shall be furnished

by said commissioner to the county treasurers, and by the county treasurers to the supervisors of the proper townships, in time for the assessment of the year eighteen hundred and sixty-nine, so far as the same may be practicable."

See, also, section 1485, 1 Comp Laws.

The act itself also indicates that the parties contemplated that these lands should be selected within four years, afterwards extended to six years, and during that period the State held the lands in trust for the fulfillment of its grant and could not dispose of them. *Lemoine* v. *Dunklin County*, 51 Fed. 487. But, after the expiration of the six-year period of reservation, the trust expired, and the State was at liberty to dispose of these lands as it saw fit. The trust relation having been terminated, laches might be imputed to the respondent for an unreasonable and inequitable delay. *Lemoine* v. *Dunklin County*, supra. It was held by this court in *People, ex rel. Mabley,* v. *Judge of Superior Court of Detroit*, 41 Mich. 31, that "the writ of mandamus is not a writ of right, and is not usually allowed to parties who have been culpably dilatory." The relator and his assignors have waited for 33 years before applying for their patents. The delay is wholly unexplained. The State has been deprived of the revenue which it would have received if the lands had been selected within a reasonable time. Timber which was ignored and treated as worthless in 1872 is eagerly sought for now, and, presumably, the lands in question are of greater value.

Under such circumstances, I think this court ought to decline to exercise its discretion in favor of relator, and the writ should be denied.

McALVAY, C. J., concurred with BLAIR, J. GRANT, J., did not sit.