CASE v. CITY OF SAGINAW.

TAXATION—SPECIAL ASSESSMENTS—MUNICIPAL CORPORATIONS.
  Special assessments for local improvements are not in-
  cluded in Act No. 107, § 130, Pub. Acts 1899, and Act No.
  211, Pub. Acts 1905 (1 Comp. Laws 1915, § 4130), pro-
  viding that "all taxes charged against lands" sold for de-
  linquent taxes "in the office of the auditor general at the
  time they are deeded to the State shall be canceled" and
  such lands omitted and canceled from the assessment rolls
  and "shall not be liable to any assessment for any purpose
  until the same are again sold and deeded by the State."
  OSTRANDER, BIRD, STEERE, and STONE, JJ., dissenting.

Appeal from Saginaw; Gage, J. Submitted January
9, 1917. (Docket No. 68.) Decided June 1, 1917.

Bill by Winfred L. Case against the city of Saginaw
and others to enjoin the spreading of an assessment
against plaintiff's land. From a decree dismissing the
bill, plaintiff appeals. Affirmed by a divided court.

*A. Elwood Snow,* for plaintiff.
*Robert T. Holland,* for defendants.

KUHN, C. J. This is an appeal from an order dis-
missing a bill of complaint filed to enjoin the city
assessor of the city of Saginaw from spreading on the
1916 city tax rolls, against certain premises situated
in said city of Saginaw, the 1916 installment of a spe-
cial sewer tax, the first installment of which was levied
in 1912, and the 1916 installment of a special sidewalk
tax, the first installment of which was levied in 1914.

The premises in question were bid off to the State of
Michigan for delinquent taxes for the years 1905 to
1910, inclusive, and on January 28, 1914, were deeded
to the State by the auditor general. On August 18,

1914, the commissioner of the State land office conveyed the premises to the plaintiff as trustee, and plaintiff still retains the title. During the year 1911 the city of Saginaw caused a sewer to be constructed in a street running along one side of the property, and an assessment was made by the city against the property and became a lien against it on March 26, 1912. The assessment was not paid, and the city divided it into ten equal parts and spread same over a period of ten years. At the time of the transfer of the land to the State two assessments only had been spread. During the year 1913 the city caused a sidewalk to be constructed on a street bounding this property, and an assessment was made against the property for this sidewalk which became a lien on November 15, 1913. The assessment was not paid, and the city divided it into five equal parts and spread the same over a period of five years.

At the time of the transfer of the property to the State there had been returned delinquent State, county, and city taxes amounting to the sum of $395.05, of which $62.14 were State taxes, $25.50 county taxes, and $307.71 city and local taxes. Included in the last sum was the item of $54.60, the 1912 installment of the special sewer tax. The plaintiff paid $500 to the State for the premises, and this· sum was divided between the State, county, and city in the ratio of the above amounts, viz., to the State $78.65, to the county $53.32, to the city $368.03. In arriving at the amount to be paid to the city, no consideration was given to installments for special taxes which were spread in 1913 and 1914, nor to those which would, under ordinary conditions, have been spread in future years to complete the payment of the improvements, making a total of $704.07.

The defendants threaten to levy the assessments for the year 1916 against said property, amounting to the

sum of $105.13.  The plaintiff contends that, inasmuch as these assessments became a lien upon the property before it was sold to the State, the lien became canceled by the transfer to the State, that they are no longer a lien upon the property, and he is not chargeable with them.  He relies upon sections 127, 130, and 131 of Act No. 107 of the Public Acts of 1899, and Act No. 211 of the Public Acts of 1905 (1 Comp. Laws 1915, §§ 4126, 4129, 4130), to uphold his contention.  The principal question involved is whether the language of section 130 of the general tax law—

"All taxes charged against such lands in the office of the auditor general at the time they are deeded to the State shall be canceled," and "the supervisor shall omit and cancel from his assessment roll all said lands so deeded to the State," and "said lands so deeded as aforesaid shall not be liable to any assessment for any purpose until the same are again sold and deeded by the State,"

—operates to cancel the lien of the special taxes referred to in the bill of complaint.  Being satisfied that the construction given this statute by the learned trial judge is correct, and he having given us the benefit of a written opinion supporting his conclusions, we herewith set forth and adopt certain parts thereof as follows:

"It is apparent that, if the contention of the complainant is correct that wherever the expense of the laying of pavements, of sewers and of sidewalks is felt to be a burden by the owner of a piece of property, especially if it is unimproved real estate, that in order to throw the burden of constructing these improvements upon the city at large, it is for his interest to let the taxes accumulate against the property from year to year, until it is finally sold to the State and then get some one else to buy it from the auditor general, thereby releasing it from all the expenses of making the improvements mentioned.  It is also apparent that, after making these improvements and paying for

196—Mich.—44.

them out of the funds of the taxing district at large, that the taxing district must stand all of the cost of these improvements notwithstanding the fact that the charter provides that the expense of such improvements shall be charged upon the property benefited, so the words, 'All taxes charged against such lands in the office of the auditor general at the time they are deeded to the State shall be canceled,' authorize the canceling of these special assessments by the auditor general. If so, where is the warrant for so holding? Certainly it is not found in the language quoted. These special assessments were not 'charged against such lands in the office of the auditor general' at the time that the land was taken over by the State and became State tax land. The previous section, 129, throws light on the proper construction of this part of section 130, and it reads as follows:

" 'The commissioner of the State land office shall make a list or entry in books in his office of such lands, separate from other State lands, showing the amount of taxes due and the years for which such lands were delinquent for taxes. * * *'

"This section clearly indicates that these are the taxes to be canceled as provided for in the next section. The word 'taxes' in section 131 does not include special assessments for local purposes. It was early decided in this State that the exemption of houses of public worship from taxation applies only to taxes imposed under the general system of taxation adopted for the State, counties, townships, or other municipal corporations, and does not extend to assessments for the expense of paving of streets imposed upon the owners or occupants of lots. *Lefevre* v. *Mayor, etc., of Detroit,* 2 Mich. 587; *Motz* v. *City of Detroit,* 18 Mich. 495; *City of San Diego* v. *Linda Vista Irrigation District,* 108 Cal. 189 ([41 Pac. 291] 35 L. R. A. 33). See, also, note 1 of the last volume.

"The provision of article 10, § 3, of the State Constitution, which reads in part as follows: 'The legislature shall provide by law a uniform rule of taxation, except on property paying specific taxes'—is uniformly held by the courts not to refer to special assessments for local purposes, but to refer to the general taxes imposed upon the public for general governmental purposes. *Rolph* v. *City of Fargo,* 7 N. D. 640 ([76 N.

W. 242], 42 L. R. A. 646, at page 651) ; *Mayor, etc., of Birmingham* v. *Klein,* 89 Ala. 461 ([7 South. 386] 8 L. R. A. 369, and notes). It is unnecessary to cite authorities to the point that where a local act conflicts with the general statutes the legislature is presumed to have intended that the local act be an exception to the general statute. It is equally well established that the later statute governs. The charter is the last expression of the legislative purpose. *Pattinson* v. *Flayer,* 158 Mich. 56 (122 N. W. 215).

"The law cited by counsel does not provide that all lands transferred to the State under the provisions of section 127, Act No. 107 of the Public Acts of 1899, shall be relieved of all liens for local improvements. It is true that the charter permits the city to avail itself for the collection of all revenues due to it, of the machinery provided by the general statute for the collection of taxes due for township, county and State taxes. The city might have proceeded to sell the property for the collection of such revenues, as does Detroit and many other municipalities, by separate proceedings for the collection of its local assessments. It cannot be because the city avails itself of the proceedings provided by the general statute for the collection of these revenues that it thereby is to suffer the loss of all the money that has been expended by it for local improvements, which have not, at the time the property is taken over by the State, been, as yet, placed in the general tax roll. All special assessments for such improvements may be reassessed under the provisions of the charter.

"Charter of 1904, tit. 8, § 26, reads as follows:

" 'Whenever any special assessment for the improvement of streets or for any other public work shall in the opinion of the council be deemed invalid the common council may vacate and set aside the same; and whenever any such special assessment shall be so vacated or shall be held invalid by a judgment or decree of any court of competent jurisdiction the common council may cause a new assessment to be made. Such new assessment shall be made in the manner provided for making original assessments of like nature, and whenever the tax, or any part thereof, assessed upon any lot or parcel of real estate by the original assessment, has been paid, and shall not have been refunded, it shall be the duty of the assessor and controller to

apply such assessment upon said lot or parcel, and to make a minute thereof on the new assessment roll.'

"Such a proceeding has been upheld by our Supreme Court in *A. P. Cook Co.* v. *Auditor General,* 79 Mich. 100 (44 N. W. 420), and in *Auditor General* v. *Gurney,* 109 Mich. 472 (67 N. W. 525, 1113), where it is said:

" 'Even where the taxes have been set aside by the court as invalid, they may be reassessed against the land, except as to such as are absolutely void.'

"Judge COOLEY in his work on Taxation, vol. 1 (3d Ed.), p. 526, says:

" 'The method of curing defects by reassessment of the tax is less open to abuse than any that has hitherto been mentioned. Whether this be done by general law, which shall provide for all cases in which tax proceedings prove invalid, and authorize the same tax to be imposed upon the same persons or property that ought to be charged therewith, by proceedings begun *de novo,* or, on the other hand, shall assume the form of a special law providing for a like reassessment in any particular case, it is scarcely possible that it should cause serious injustice beyond what is incident to all tax legislation.'

"Continuing on page 527 Judge COOLEY holds that no injustice is done by such reassessment even in cases where there has been a change of owner since the original assessment was levied (citing *May* v. *Holdridge,* 23 Wis. 93; *Mills* v. *Charleton,* 29 Wis. 400 (9 Am. Rep. 578) ; *Evans* v. *Sharp,* 29 Wis. 564; *Chase* v. *Whiting,* 30 Wis. 544). For a careful discussion of this power of reassessment, see *Tallman* v. *City of Janesville,* 17 Wis. 71, at page 76, etc.

"In the *Tallman Case* the supreme court by Cole, J., says:

" 'Almost every system of taxation operates more or less unequally, and works injustice in individual cases. The objection here taken would lie with equal force against the provision of the revised statutes which authorizes the assessor, upon discovering that any land liable to taxation in his town was omitted in the assessment roll in either or both the two previous years, to assess the same for those years it was omitted, in order that the taxes, to the amount which should have been paid in the years of such omission, may be imposed and collected' (citing

Revised Statutes of Wisconsin). 'Under these provisions it is very apparent a tax might be levied and collected upon lands which had, by purchase, become the property of other persons than those who owned them when the tax should have been paid.'

" 'Where a special tax * * * to pay for city improvements is invalid by reason of some defect of power in the municipal authorities, it is competent for the legislature to supply the defect, and to provide for a reassessment.' *May* v. *Holdridge*, 23 Wis. 93.

"If the complainant in this case had examined the assessment rolls in the office of the city assessor, he would have discovered that these special assessments had never been paid on that property, and certainly in justice to the city should be paid.

"As I have before stated, the statute under which these lands were acquired by the State and by the complainant nowhere provided that they should be discharged of all liens for special assessments for local improvements, and it would be a manifest injustice to the city to so construe this statute as to deprive the city of all the moneys which it had expended for those improvements. Complainant cites the case of *Auditor General* v. *Clifford*, 143 Mich. 630 (107 N. W. 287), in which it is held that a conveyance in due form for taxes extinguishes all prior liens, whether for taxes or otherwise. That is no new doctrine; that has always been the law of this State. But the question here is one of statutory construction. If you adopt the one contended for by the complainant, we abrogate the provisions of the city charter, which were devised for the protection of the city in the orderly improvement of its streets. If the other is adopted, the charter and the general law are reconciled and made to stand. I am of the opinion that the latter course ought to be taken, and the bill should be dismissed."

The order dismissing the bill of complaint is affirmed, with costs to the defendants.

MOORE and BROOKE, JJ., concurred with KUHN, C. J.

FELLOWS, J. (*concurring*). I am not prepared to agree with all that was said by the learned circuit judge in his opinion filed in this case. I think it suffi-

cient to hold, and that we should hold, that special assessments which are to fall due in the future and for the payment of which these lands were not delinquent when bid off to the State are not "taxes charged against such lands in the office of the auditor general at the time they are deeded to the State"; that the lands were not liable for special assessments falling due while they were owned and held by the State, but were liable for such special assessments as became due after they became subject to private ownership. I agree with the CHIEF JUSTICE that the case should be affirmed.

OSTRANDER, J. (*dissenting*). It is, I think, illogical to say that, when the State acquires title to lands in tax proceedings, a lien for a special tax, existing when title is so acquired, remains, to be enforced whenever the State secures a purchaser for the land. After lands are deeded to the State, the supervisor is directed by the law to omit them from his roll. While they belong to the State, they are liable to no assessment, for any purpose. If any tax is charged against them in the office of the auditor general, it must be canceled. The State, then, has all the title there is, and when it sells and conveys the land, the purchaser acquires, *prima facie*, a fee. The law does not, in my opinion, contemplate a continuing lien for special taxes after the State has acquired its title.

The order dismissing the bill should be reversed, with costs to appellant, and the record remanded.

STONE, BIRD, and STEERE, JJ., concurred with OSTRANDER, J.