AUDITOR· GENERAL *v.* MacKINNON BOILER & MACHINE
CO.

1. TAXATION—EXEMPTION—POWERS OF LEGISLATURE.
   There is no constitutional restriction on the power of the
   legislature to exempt land from taxation, and it can exer-
   cise the power of exemption as it chooses.

2. SAME—SPECIAL ASSESSMENTS—PROPERTY OWNED BUT NOT USED
   BY GOVERNMENTAL AGENCY.
   Vacant, unimproved lots, not being used for governmental
   purposes of the State university, are subject to a special
   assessment for local improvements.[1] OSTRANDER, STONE,
   and FELLOWS, JJ., dissenting.

Appeal from Bay; Tappan, J., presiding. Submit-
ted January 11, 1917. (Docket No. 9.) Decided De-
cember 28, 1917.

Petition by Oramel B. Fuller, auditor general,
for the sale of land delinquent for taxes: On objection
filed by the MacKinnon Boiler & Machine Company.
From a decree for plaintiff, defendant appeals. Af-
firmed.

*S. G. Houghton,* for plaintiff.

*Kinnane & Lane,* for defendant.

BIRD, J. In the year 1905 C. A. Kent of Detroit
conveyed certain lands in Bay City to the regents of
the university, the same being a gift, for the use and
benefit of the university. Subsequently the regents
sold a portion thereof to petitioner. Prior to the sale,
however, a special assessment for sewer purposes had
been made thereon by the local authorities. The as-
sessment remaining unpaid the premises were includ-

[1]On the question of liability to local assessments for benefits
of property exempt from general taxation, see notes in 18 L. R.
A. (N. S.) 451; 32 L. R. A. (N. S.) 303; 44 L. R. A. (N. S.) 57;
L. R. A. 1916F, 864; 35 L. R. A. 33.

ed in the auditor's annual petition filed in the circuit court of Bay county for the sale of lands for delinquent taxes. Petitioner intervened and made the objection that at the time the assessment was made it was the property of the university, and therefore invalid, as no valid tax or assessment could be levied thereon. This objection was overruled at the hearing, and petitioner has appealed.

1. The one question presented for solution is whether vacant real estate owned by the university, but not actually used for any purposes in connection with its affairs, can be subjected to a special assessment for local improvements. Counsel for relator argues that the assessment is invalid on the ground that the board of regents is a constitutional body, has independent control of the affairs of the university, and therefore its property is not subject to the acts and control of the legislature.

We think it is clear that if this property is exempt from the assessment in question it must be so by force of some legislative acts. The Constitution does not deal with exemptions from taxation. There being no constitutional restriction on this power of the legislature, it follows that it can exercise the power of exemption as it chooses. It has exercised this power by declaring in section 7 of the tax law that "all public property belonging to the State of Michigan shall be exempt from taxation." 1 Comp. Laws 1915, § 4001. This and similar language has been the subject of much construction by the courts, and in the majority of cases it has been held not to include special assessments for local improvements. *Chicago Schools* v. *City of Chicago*, 207 Ill. 37 (69 N. E. 580) ; *State* v. *Robertson*, 24 N. J. Law, 504; *School District of Ft. Smith* v. *Board of Improvement*, 65 Ark. 343 (46 S. W. 418) ; *Sioux City* v. *School District*, 55 Iowa, 150 (7 N. W. 488) ; *City of Atlanta* v. *Presbyterian*

*Church,* 86 Ga. 737 (13 S. E. 252, 12 L. R. A. 852) ;
*Hassan* v. *City of Rochester,* 67 N. Y. 528; *Sewickley
M. E. Church's Appeal,* 165 Pa. 475 (30 Atl. 1007) ;
*Inhabitants of Essex County* v. *City of Salem,* 153
Mass. 141 (26 N. E. 431) ; Cooley on Taxation (2d
Ed.), p. 172.

The holding in most of the cases is that these words
of exemption apply only to *general* taxation.   It ap-
pears, however, to have been settled in this State that
these words of exemption protect public property from
local assessments (*City of Big Rapids* v. *Board of
Sup'rs of Mecosta Co.,* 99 Mich. 351 [58 N. W. 358]) ;
but this has been construed to mean such property as
is used for governmental purposes (*Newberry* v. *City
of Detroit,* 164 Mich. 410 [129 N. W. 699, 32 L. R. A.
(N. S.) 303]).   In this case it was held that a public
park was not exempt from special assessment for pav-
ing purposes because not being used for governmental
purposes.   If the general words of exemption in the
statute do not apply to property owned by a munici-
pality which is not used for governmental purposes, a
like reasoning seems to lead to the conclusion that
real estate owned by the university, but not used for
governmental purposes, would not be included within
the exemption.   The university as well as the munici-
pality is a corporate entity, made so by force of the
Constitution, and both are State agencies.

The reason which underlies the exemption of public
property from general taxation is that it would be
without profit to assess public property as the tax
would have to be paid out of the general fund to which
all contributed, but this reason does not exist when
special assessments are made for local improvements.
Whenever property is exempt from special assessment
the remaining property owners included within the
special assessment district must pay for the benefits
which accrue to the exempt property.   This is so mani-

festly unfair that I am of the opinion that it was not the intention of the legislature to exempt property from special assessments which was owned but not used by the public authorities for governmental purposes. This question was before the California court on a similar state of facts involving its university, and the same arguments were urged in support of the exemption. But that court held that inasmuch as the property of the university was not made use of in connection with the affairs of the university, it was subject to the special assessment. It was there said in part:

"The principle is well established that where any of such lands are not directly and necessarily used for a public purpose they may be subjected to the payment of special assessments for benefits. And this is in consonance with justice and equity. For to assess certain lot owners upon a street for all the cost of the work, part of which is for the benefit of a public institution, is to enhance the value of the university property at the expense of the few, instead of by taxation upon all the people at the expense of all. So it is said in *Hassan* v. *City of Rochester*, 67 N. Y. 528:

"'A different rule would compel individual lot owners to pay assessments levied for improvements which were a benefit to the State lands, without any adequate advantage, and in many instances impose a burden which would be extremely onerous and produce great injustice.'" *City Street Imp. Co.* v. *Regents of the University of California*, 153 Cal. 776 (96 Pac. 801, 18 L. R. A. [N. S.] 451).

In view of the fact that the record discloses that the property in question was vacant unimproved lots in the city of Bay City, and that they were not being used for governmental purposes of the university, we think the conclusion of the trial court should be affirmed.

KUHN, C. J., and MOORE, STEERE, and BROOKE, JJ., concurred with BIRD, J.

FELLOWS, J. (*dissenting in part*). I am for affirmance, but not for the reasons stated by Mr. Justice BIRD, and by the learned trial judge. I do not agree that a municipal unit of the State may enforce by sale for delinquency a special assessment upon the property held by its creator, the sovereign, the State, even though such property be not in use for governmental purposes, nor that this court committed itself to such doctrine by the case of *Newberry* v. *City of Detroit*, 164 Mich. 410 (129 N. W. 699, 32 L. R. A. [N. S.] 303). That case involved a special assessment for paving purposes, and the question involved was whether the city should assess upon property owned by itself and not used for governmental purposes its proportion of the costs. The charter provision was as follows:

"For the purpose of such assessment, the lots and parcels of real estate situated on said street, and fronting the portion thereof ordered to be improved, shall constitute one local assessment district"; * * * the cost and expense of the paving to be assessed according to frontage. Detroit Charter 1904, §§ 266, 267, pp. 182-184.

It was held that the municipality should assess upon its own property, not used for governmental purposes, its proportion of the cost of the local improvement, and that such property was not exempt from such special assessment. This was the question there before the court and there decided. That case is not authority to the point that property owned by the State is subject to sale for failure to pay local assessments, but only to the point that property owned by the municipality, and not used for governmental purposes, should pay its proportion of the cost of local improvements made under the provisions of its charter. In the instant case the State parted with its title to the property on June 24, 1912. On March 24, 1913,

the tax roll for this special assessment was approved by the board of public works, and the certificate of the comptroller was attached and the entire assessment approved May 1, 1913. The ordinance ordering the improvement was passed July 3, 1911, but this special assessment did not become due until nearly a year after the State had parted with its title and the property had become subject to private ownership. In the case of *Case* v. *City of Saginaw*, 196 Mich. 687 (163 N. W. 115), the writer expressed the view:

"That the lands were not liable for special assessments falling due while they were owned and held by the State, but were liable for such special assessments as became due after they became subject to private ownership."

I am unable to distinguish the facts in that case from those in this case. There, as here, the property was vacant city property, used for no governmental purpose; it had been bid off by the State for delinquent taxes. One of the special assessments in that case, as was the assessment in the instant case, was for the construction of a sewer. Entertaining the views there expressed, I think this case should be affirmed.

OSTRANDER, J. (*dissenting*). It is a sound rule, approved by this court (*City of Big Rapids* v. *Board of Sup'rs of Mecosta Co.*, 99 Mich. 351 [58 N. W. 358]), that property owned by the State, or by the United States, or by a municipality for public uses, is not subject to taxation, unless so provided by positive legislation. The rule is the same whether the tax sought to be imposed is a general or a special tax, an exaction for general or for special local purposes. The application of the rule is not affected by the fact that the legislature may have expressly exempted such property *from taxation.*

In *Iron Mountain Public Schools* v. *O'Connor*, 143 Mich. 35 (108 N. W. 426), it appeared that after land had been listed for taxation, the roll completed, approved by the board of review, and returned to the board of supervisors for equalization, the petitioner bought the land for school purposes. Subsequently, the tax was spread thereon and not paid. The land was returned delinquent and sold at the annual tax sale under the usual decree. The school district filed its petition to vacate and set aside the decree and cancel and set aside the deed made upon the sale. There was a demurrer to the petition, which was overruled. The order overruling was set aside by this court upon the ground that the land was subject to the assessment when it was made and when the township board of review passed upon and reviewed the assessment, and no power was lodged in any person to thereafter take from the roll property listed therein; that there must be some definite period when a purchaser, whose property is generally exempt, must purchase property subject to the tax levied or to be levied thereon. Usually, the question whether a tax must be paid by one person or by another arises in cases where the land is subject to taxation, and between the vendor and the purchaser. No such question is involved here.

The land here was not liable to assessment when the proceeding to assess it was begun because it belonged to the State. The title, it is true, was in the regents. But as affecting the question here involved the beneficial owner was the State. *Auditor General* v. *Regents of University*, 83 Mich. 467 (47 N. W. 440, 10 L. R. A. 376). Under the rule stated, it was not liable to be assessed for a special improvement because it belonged to the State, and there was no law which permitted land so owned to be subjected to assessment and sold for a tax or levy for special im-

provements. The title to the land passed to the regents of the university in 1905. The regents sold it to appellant in June, 1912. Before that time the city of Bay City had ordered the construction of the sewer, a survey and estimate of cost had been made, reported and approved, a contract for the construction of the sewer had been let, and the sewer was completed in the summer of 1912. The roll of the special assessment was made and approved in March, 1913. The proceeding was a single one; the validity of the assessment depending upon the lawfulness of the first quite as much as upon the legality of the last step or act taken therein. As between the municipality instituting the proceeding and its officers and the land in question, jurisdiction to subject it and its owner to the exaction attached when the proceeding was instituted. Appellant bought it subject to no lien. It purchased it from an owner in whose hands it was not liable to the assessment.

It is my opinion, therefore, that the decree should be reversed and one entered annulling the tax complained about.

STONE, J., concurred with OSTRANDER, J.