School District of Fort Smith *v.* Board of Improvement.

Opinion delivered May 28, 1898.

1.  TAXATION—SCHOOL LAND.—Land belonging to a school district, but not used for school purposes, is not exempt from a tax for local improvement.   (Page 348.)

2.  SCHOOL LAND—ENFORCEMENT OF LIEN FOR TAXES.—A decree enforcing a lien for improvement taxes against land belonging to a school district, but which is not used exclusively for school purposes, is not incorrect in ordering a sale of the land if the sum adjudged as a lien thereon be not paid within ten days.   (Page 350.)

3.—DE FACTO COLLECTOR—AUTHORITY.—The authority of a *de facto* collector in taking the necessary steps to fix a lien upon land for an improvement tax cannot be questioned in collateral proceedings.   (Page 351.)

4.  SUIT TO ENFORCE TAX.—ATTORNEY'S FEE.—Sand. & H. Dig., ¿ 5341, 5345, provide for a suit to enforce a lien for local improvement taxes against delinquent land, and that "upon default a decree shall be rendered against such property for the amount of such assessment, penalty and cost, and an attorney's fee," but no attorney's fee is expressly provided where the suit is contested.   *Held* that the legislature intended that an attorney's fee should be allowed in all cases where judgment is recovered against the land.   (Page 351.)

5.  ATTORNEY'S FEE—ALLOWANCE.—The allowance of an attorney's fee in a suit to collect local improvement taxes is within the discretion of the trial court; and while it was error for that court to include compensation for the attorney's services to be rendered in the supreme court on appeal, yet if the services were rendered, and the compensation was not unreasonable, the error was not prejudicial.   (Page 352.)

Appeal from Sebastian Circuit Court in Chancery, Fort Smith District.

EDGAR E. BRYANT, Judge.

STATEMENT BY THE COURT.

The Board of Improvement of Sewer District No. 1 of Fort Smith, Ark., brought suit against a large number of tracts of land within its district as delinquent for the improvement taxes for the year 1896.   Among other defendants was the School District of Fort Smith and various tracts of land owned by it.   The complaint is drawn in strict conformity to sections 5340, 5341, 5342, 5343, 5344, 5345, Sandels & Hill's Digest.

The school district filed demurrer and answer to this complaint.   The answer set forth:   (1) A denial of the assessment of the property set forth in the complaint, and a denial that such assessment was delivered to the city clerk; and denies that the officer authorized by law to collect the same published notice of the collection, and that return was made by the proper officer of the delinquent list.   (2) That it is a public corporation, and its property is not subject to the taxes of plaintiff district.

The court found in favor of the plaintiff, and rendered judgment against the property of the school district, and by default against the other property embraced in the complaint belonging to other defendants.

In addition to the tax and penalty found due against each of the tracts, the court fixed a commissioner's fee of $2 and an attorney's fee of $5, to be included in the costs. The school district excepted to the findings and judgment; the other defendants did not. The commissioner's fee was put at $1 per tract if paid on or before sale, and $2 if sold. The usual order of foreclosure and sale was made. The decree is in strict conformity to sections 5345, 5349, 5350, 5351, Sandels & Hill's Digest.

Subsequently, the school district filed a motion for correction of the judgment, and to set the same aside, so far as concerned the commissioner's and attorney's fees.

The court modified the commissioner's fee by making it $2 in case of sale, and no fee when property was paid on before sale, and changed the attorney's fee from $5 for each tract to $175 for prosecution of the case in circuit and supreme court.

The case, as between appellee and the school district, was tried upon the following agreed statement of facts, treated herein as a bill of exceptions, to-wit:

"On the hearing of this cause it was agreed that Sewer District No. 1 of the city of Fort Smith was regularly organized, and improvement district taxes for sewer purposes were regularly extended against the property in the sewer district for the year 1896, as required by law, including the property of defendant school district, as hereinafter described. Such taxes were regularly made up, and, with a warrant for their collection, the tax list was delivered to Milton P. Boyd, collector of plaintiff district, as required by law. That, pursuant to the warrant of the city clerk and the statute in such cases provided, the said Boyd gave the notice required by law for the collection of said taxes, and opened his office and the books at the time and place specified in said notice. That, all of the time specified in said notice, the collections were properly made by said Boyd, he was recognized by the public, by the Board of Improvement of Sewer District No. 1, by the city clerk and county clerk as the collector of said district, and did collect about the usual amount of taxes which are collected each year by the collector before the penalty attaches. That during the year 1895 the improvement districts of the city of

Fort Smith, including plaintiff board, joined in a suit in equity against the city of Fort Smith, the city collector and the city clerk, seeking to enjoin the city from proceeding, the collector from acting as collector of improvement taxes, and the city clerk from delivering the warrant and tax list to the city collector. That, by said judgment and decree of Sebastian circuit court for the Fort Smith district, the city clerk was enjoined from delivering the tax book and warrant to the city collector, and the city collector was enjoined from collecting improvement taxes, and the city of Fort Smith was enjoined, through its officers and agents, from collecting or receiving any part of the improvement taxes. That the said judgment was based upon the ground that the act of 1895, requiring these collections to be made by the city collector in cities of the first class, was unconstitutional and void. That, subsequent to the decree aforesaid, the defendant therein appealed the said case to the supreme court of Arkansas, and said injunction was dissolved on the day before the time for the collection of the taxes of 1896 expired. That, on the day that the time expired, the city collector sought by mandamus to have the custody of the said tax list, and the court aforesaid refused said petition for mandamus on the ground that the mandate of the supreme court had not been filed. That a few days thereafter said mandate was filed, but after the date of the time for collecting the taxes of 1896 had expired. When said mandamus was issued, the city collector got said books, and advertised that he would then collect the taxes; and, within a few hours after such advertisement appeared, the Sebastian circuit court enjoined him from collecting said taxes, upon the ground that the time for collection had expired. That said Boyd had been elected collector of plaintiff district at its organization in 1888, and had continued from that time to collect the taxes, under and by direction of the board, as its collector. That for 1896 he completed the full time allowed by law without let or hindrance from any one, and, as soon as the time expired, made his return of the delinquent property, and all of the property hereinafter described was so returned; and he attached the penalty of 20 per cent., and the board ordered suit. Subsequently the city collector also made a return of this property, among

others, as delinquent. That Boyd made return several days before the court ordered the tax book delivered to the city collector. That, during all the time fixed by the law for the collection of 1896, the city collector was under injunction from Sebastian circuit court from collecting these taxes. That the School District of Fort Smith owns the property in the judgments described, but none is used for school houses or grounds attached or part of the school houses or enclosures for school purposes. Nearly all of it is vacant and unoccupied lots and blocks, and the remainder improved lots and blocks, which are rented, and the revenue therefrom turned into the school district for school purposes. That all of said lands have been acquired by purchase at mortgage foreclosure sales and execution sales for the recovery of money loaned by said district, and at public sale made under act of Congress donating the old Military Reserve to the city as trustee for the school district. The school district owns a fee simple title to all the land in the judgment described, and has not paid the sewer taxes, nor offered to Boyd, or the city collector, either, to pay the sewer taxes for the year 1896."

*Chas. E. Warner*, for appellant.

The act of 1881, authorizing the organization of improvement districts and the assessment of real property for local improvements, does not apply to school lands. 56 Ark. 354, 359; 49 Conn. 89; 1 Desty on Taxation, § 12; 2 Dill. Mun. Corp. § 773. The judgment was for a sale of the property, and that is fatal to it. 56 Ark. 354. One is not bound to obey a *de facto* officer. 8 How. Pr. 365; 55 Barb. 385; 23 Wend. 501; 35 Col. 21. The allowance of an attorney's fee was error. Potter's Dwarris on Const. of Stat. 255.

*Hill & Brizzolara*, for appellee.

The exemption from taxation extends only to the property in actual and exclusive use for school purposes. Sec. 5, art. 16, Const. 1874; 56 Ark. 445; Sand. & H. Dig., §§ 5321, 5330; 62 Ark. 481, 488; Dill. Mun. Corp. (3 Ed.) § 773. Nor does the immunity from sale for taxes apply to property held by a municipal corporation in its private, rather than its public, capacity. The immunity from sale under execution extends only

to cases where the property is necessary to enable the corporation to discharge its duties to the public. 2 Dill. Mun. Corp. (4 Ed.) § 576; 2 Morawetz, Priv. Corp. § 1125; 2 Beach, Pub. Corp. § 1422; 12 Fed. 292; 15 Cal. 631; 3 Woods, 103; S. C. 18 Fed. Cas. 111; 105 U. S. 600; 1 Duval (Ky.), 295; 15 W. Va. 131; 23 La. Ann. 61. "The levy of a municipal tax by *de facto* officers is valid as to third parties until ousted by direct proceedings for that purpose." 1 Desty, Taxation, 510; 43 Ark. 243; 22 Ark. 569; 25 Ark. 336; 55 Ark. 81; 49 Ark. 439; 42 Ark. 582; 52 Ark. 356; 43 Ia. 243; 24 *id.* 459, 474. If the penalty and costs were illegal, the objector should have made a tender of the legal part of the taxes levied. 46 Ark. 73.

WOOD, J., (after stating the facts). 1. The first question is, does the act of 1881, authorizing the organization of improvement districts, and the assessment of real property for local improvement, include within its provisions lands belonging to the public schools, but which are not used exclusively for public purposes?

Section 5321 of Sand. & H. Dig. provides for the assessment by the council of any city of the first or second class, or any incorporated town, of *all real property* within such city, or within any district thereof, for the purpose of making any local improvements of a public nature.

Section 5330 of Sand. & H. Dig. provides that "the words real property, whenever used in this act, shall have the same meaning and specification as are attached to said words in the act providing for the collection of state, county, and city revenue."

The term "real property," in the act providing for the collection of the general revenue, means and includes, "not only the land itself, whether laid out in town lots or otherwise, with all things therein contained, but also all buildings, structures and improvements, and other fixtures of whatever kind thereon, and all rights and privileges belonging or in anywise appertaining thereto." Sec. 6401, Sand. & H. Dig.

The fact that the legislature enacted, in the law creating improvement districts, that the term "real property," as therein used, should have the same meaning as said term in the general

revenue law, shows that the design was to have assessments in local improvement districts embrace the same property as was subject to general taxation. The only *real property* of school districts exempt from taxation under the general revenue law, as interpreted by our decisions, is such as is used actually and exclusively for public purposes, and the property here involved was not so used. *School District of Fort Smith* v. *Howe,* 62 Ark. 481. See also *Brodie* v. *Fitzgerald,* 56 Ark. 445.

We therefore answer the question propounded in the beginning in the affirmative.

The case of *Board of Improvement* v. *School District,* 56 Ark. 354, which appellant relies upon as supporting its contention, is not in conflict with the doctrine here announced. The question involved in that case was the liability of a public school building to assessment for local improvement. As was said by this court in *School District* v. *Brodie, supra:* "It is necessary that a school district should have a school building and grounds. If such property was taxed and sold for nonpayment of taxes, the public would have to pay other taxes in order to replace the same, for it is absolutely essential that a school district should own a school house." And this court in *Board of Improvement* v. *School District, supra,* applied the presumptions that arise in favor of exemptions from general taxation of property owned by the state and its municipalities, and which is held by them for governmental purposes, to local assessments or taxation for local improvements. These exemptions from general taxation which obtain, presumptively, under the law (Cooley on Tax. 172) are expressly recognized and declared to exist under our constitution and statutes. Const. Ark., art. 16, § 5; Sand. & H. Dig , § 6414.

In *Board of Improvement* v. *School District,* above, it is said: "There is nothing in the act to require the inference that it was intended to embrace public property held by the government, the state, or any of the state's subordinate agencies, *and used for public purposes."* It thus appears that this case, instead or being out of harmony with the doctrine we here announce, inferentially, at least, supports it by recognizing that the condition of the exemption for public property held by the state's subordinate agencies was that it should be "used for public

purposes." At all events, the above case only decides that a public school building, used for *public purposes*, owned by a school district, is not the subject of taxation for local improvements. But the case we have here is that of property owned by a school district which is not used for public purposes. Therefore this case is not ruled by *Board of Improvement* v. *School Dist.*, 56 Ark. 354, as contended by counsel.

2. It is contended that the judgment is invalid because it directed a sale of the property.

The statute provides that the "assessment shall be a charge against and a lien on the lands named therein from the date of said ordinance" fixing the assessment. It provides for a decree against the property in case of default; for the assessment, penalty, and cost, and for an attorney's fee; and for condemnation and sale of the lands for the sum adjudged, if same be not paid within ten days after the decree of condemnation. Sand. & H. Dig., § 5335, *et seq.* The decree ordering the sale conforms to the statutory requirements, and, unless these are void, the judgment is valid, and should be enforced in the manner prescribed. There is no constitutional inhibition against the mode of enforcing such a decree against these corporations, and nothing in such manner of enforcement unwise, inexpedient, or that can be said to contravene public policy. The lands in suit, as shown by the agreed statement, are not actually and exclusively being used for public purposes, and, under the decision of this court in *School Dist. of Fort Smith* v. *Howe, supra*, must be deemed to be held by the school district "in its commercial capacity, as a private corporation." "It is a general principle of law," says Judge Pardee in *Hart* v. *New Orleans*, 12 Fed. Rep. 292, "that the private property of municipal corporations—i. e., that which is not necessary to the performance of the functions of government—may be seized and sold for the payment of debts." Judge Dillon says: "In some of the states it is held that the private property of municipal corporations, that is, such as they own for profit, and charged with no public trusts or uses, may be sold on execution against them. In other states, either by statute or on general principles, it is declared that judgments against municipal corporations cannot be enforced by ordinary writs of execution, and that the remedy of the credit-

or is by mandamus to compel payment, or the levy of a tax for that purpose. Questions of this kind are influenced much by local legislation.". 2 Dillon, Mun. Corp. (4 Ed.) § 576; 2 Mor. Pr. Corp. § 1125; 2 Beach, Pub. Corp. § 1422; *Hart v. New Orleans*, 12 Fed. Rep. 292; *Holladay* v. *Frisbie*, 15 Cal. 631; *New Orleans* v. *Morris*, 3 Woods, 103; *Brown* v. *Gates*, 15 W. Va. 131. Our legislation favors a sale by a commissioner. Sand. & H. Dig., § 5350. See on this subject authorities cited in brief of counsel for appellee.

3. The judgment for penalty and costs was correct. The statute expressly authorizes such a judgment. Sand. & H. Dig., §§ 5340, 5341, 5345. The facts stated in the record show beyond question that Boyd was the *de facto* collector at the time he made his return showing that he had affixed a penalty; and, as such, his acts were clearly authorized, and bound the property. Such acts cannot be questioned in collateral proceedings. *Barton* v. *Lattourette*, 55 Ark. 81, and cases cited; 1 Desty, Tax. 510; Welty, Law of Assessments, § 13; Cooley, Tax. 253, 255, and authorities cited.

4. Was it error to allow an attorney's fee of $175? This presents the most difficult question in the case. Section 5341 directs the board of improvement, in case property is returned delinquent, to cause a complaint in equity to be filed in the court having jurisdiction of suits for the non-payment of liens on real property, for the condemnation and sale of the property "for the payment of said assessment, penalty and costs of suits." Section 5345 provides that "summons shall be issued, and the defendant shall be required to appear and respond within five days after service, and upon default a decree shall be rendered against such property, for the amount of such assessment, penalty and costs, and an attorney's fee." Section 5349 provides: "If the decree is in favor of the board, and for the condemnation of the land, it shall be for the penalty and costs of suit, as well as for the amount of the assessment." Section 5350 provides that the decree of condemnation shall direct "that only so much property shall be sold as will pay the assessment, costs and penalty, and no more." The intention of the legislature, to be deduced from the consideration of these several sections together, is the law; and we are

of the opinion that, when so considered, they show an intention to provide for an attorney's fee, to be taxed as a part of the costs in these cases. The board is directed to bring suit, which requires the services of an attorney in all cases, whether judgment be had by default or otherwise. It is true that the provision for an attorney's fee, *eo nomine,* only occurs in section 5345, where it is mentioned *inter alia* for which the judgment shall be rendered on default. The express mention of it here shows clearly an intention to provide for it. Having mentioned it once, if it was the intention of the legislature to provide for it as a part of "the costs of suit," it was unnecessary to repeat it in other sections, where the "costs of suit" are expressly named, which included it. It would be unreasonable to suppose that the legislature intended to provide for an attorney's fee in cases of default, but did not intend to provide for it in cases where the parties appeared and resisted. And this, we think, furnishes a strong argument for the conclusion that the design of the legislature was to include the attorney's fee, expressly mentioned in section 5345, in the terms "costs of suit" and "costs" in the subsequent sections. Whether the owner of the property does or does not appear and contest, the judgment is to be a lien upon the property for the assessment, penalty, and "costs of suit." Judging of the intendment from the language, connection, and purport of all the sections, we think an attorney's fee is provided for in all cases where the board recovers judgment.

As to the amount taxed by the court in this case, we can not say that it was excessive. This court, in *England* v. *Files,* 45 Ark., at page 535, said: "A wide range of discretion is vested in the courts exercising equity jurisdiction in matters of costs." In the exercise of this discretion, the court should, and doubtless did in this case, fix the fee at an amount which it deemed a just and reasonable compensation for the services rendered. In view of the importance of the litigation, the issues raised and settled by it, the labor which necessarily devolved upon counsel to conduct it to a successful termination, all of which passed under the observation of the chancellor who tried the cause, we do not see that he abused his discretion by making an unreasonable allowance. It was improper for the trial court

to tax up as a part of the costs below an attorney's fee for services to be rendered in this court on appeal. That is a matter of which this court would have exclusive cognizance when such services had been rendered here. But such services have now been rendered, and, unless we should consider the whole amount allowed by the trial court. for services in both courts excessive, which we do not, it is clear that the substantial rights of the appellant have not been prejudiced.

The decree is affirmed.