[S. F. No. 4558.   In Bank.—June 30, 1908.]

CITY STREET IMPROVEMENT CO., Appellant, v. RE-
GENTS OF THE UNIVERSITY OF CALIFORNIA,
Respondents.

STREET ASSESSMENT—ENFORCEMENT AGAINST LANDS OF STATE UNIVER-
SITY NOT USED FOR SCHOOL PURPOSES.—An assessment for a street
improvement by which lands held in trust for the state university,
which are not in actual use for school purposes, are benefited in
value, may be enforced against such lands, the same as against the
property of a private owner.

ID.—EFFECT OF EXEMPTION FROM TAXATION.—The exemption of land
held by public agents from taxation, applies to general state, county,
and municipal taxes, and does not extend to its exemption from a
local assessment for a street improvement, enhancing the value,
if not actually used for any public purpose. The rule in this state
is that such property, when actually devoted to public use, is ex-
empt from assessments under special laws, otherwise not.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Bishop, Wheeler & Hoefler, and Alfred J. Harwood, for Appellant.

J. C. Bates, *Amicus Curiæ,* and R. M. Royce, *Amicus Curiæ,* also for Appellant.

Charles E. Snook, for Respondents.

HENSHAW, J.—By this action plaintiff sought to enforce a street-assessment lien after performance of his contract upon certain real property situated in the city and county of San Francisco, legal title to which stands in the name of the regents of the University of California. The allegations usual and pertinent to such an action were pleaded, and, in addition thereto, it was alleged that the land upon which it was sought to impose the lien was entirely unimproved, vacant and unoccupied, and was and is held and devoted solely to the private uses of the defendant, and is not incidental to the performance of any public function, nor actually appropriated to any public use whatsoever, and, further, that by the doing of the street work the land was enhanced in value at least to the amount of the assessment, and derived an equal benefit with all other lots of land assessed. A general demurrer was interposed by the defendant, which demurrer was sustained. From the judgment which followed, plaintiff appeals, and there is thus presented the single question whether, under the state of facts set forth in the complaint, the land of the defendant is or is not subject to assessment and liable for the lien following thereon, under the general laws for the improvement of streets.

As to the character, *status,* and powers of the defendant corporation, little more need be said than that it is a private corporation charged with the public trust of the general government and superintendence of the University of California. (Stats. 1867, 1868, p. 252.) This corporation has the power to hold, purchase, and convey such real estate as the purposes of the corporation shall require. It may receive donations from private individuals of moneys or other prop-

erty for the benefit of the university, and it has, under restrictions, the power of distribution of its funds. Its principal source of income is derived from the state by tax levy. One half of the moneys received from this tax must be devoted to the purpose of acquiring lands, buildings, and permanent improvements for the university, while the other moiety is under the general control of the board. (Stats. 1897, p. 44.)

Section 7 of article IX of the constitution declares that the University of California shall constitute a public trust, and its organization and government shall be perpetually continued. Section 1 of article XIII, it is not disputed, exempts the property of the University of California from taxation. But the constitution of the state being but a restriction upon the power of the legislature, the limitations therein contained will not be extended beyond the legitimate meaning and use of the terms employed. There is a broad and well-recognized distinction between a tax levied for the general public good and without special regard to the benefit conferred upon the individual or property subject to the tax, and a special assessment levied to force the payment of a benefit, of value corresponding and equal to the amount of the assessment upon the property. This matter need not be discussed, since it has been elaborately considered and expounded in *San Diego* v. *Linda Vista Irrigation Dist.*, 108 Cal. 189, [41 Pac. 291]. The opinion in that case quotes from *Hassan* v. *City of Rochester*, 67 N. Y. 528, as follows: "The collection and enforcement of assessments made for local improvements has never been the subject of general regulation by statute, and there is no provision which exempts the property of the state from liability for such assessments. Not being excepted by the statute law of the state it is left for the legislature, which is vested with ample power for that purpose, to make such enactments on the subject as may be considered needful and proper."

Hamilton on Special Assessments, section 318, summarizes the matter in the following language: "Exemptions made by general laws in favor of such property apply only to the general purposes of government, state, county and municipal, even where the statute exempts the specific property from taxation of every kind, or from being taxed by any

law of the state, and do not apply to the system of special assessments for local improvements."

With this distinction in mind, between a general tax and a special assessment for benefits, no authority has been pointed out to us in the constitution, the statute law, or in the decisions of this court which forbids the application of the street law to land whose title and use are such as here pleaded. The question cannot arise as to this being an effort to subject lands of the state, owned and used in its sovereign capacity, to an assessment lien, since, as declared in *Estate of Royer,* 123 Cal. 614, [56 Pac. 461], the university, while a governmental institution and an instrumentality of the state, is not clothed with the sovereignty of the state, and is not the sovereign. The lands, title to which is in the board of regents, are lands held for the public educational purposes of the state, and their holding and their use do not differ in principle from the lands which may be held by boards of school directors or trustees of school districts. The principle is well established that where any of such lands are not directly and necessarily used for a public purpose they may be subjected to the payment of special assessments for benefits. And this is in consonance with justice and equity. For, to assess certain lot owners upon a street for all the cost of the work, part of which is for the benefit of a public institution, is to enhance the value of the university property at the expense of the few, instead of by taxation upon all the people at the expense of all. So it is said in *Hassan* v. *City of Rochester,* 67 N. Y. 528: "A different rule would compel individual lot owners to pay assessments levied for improvements which were of benefit to the state lands, without any adequate advantage, and in many instances impose a burden which would be extremely onerous and produce great injustice. This could not have been intended." The limitation upon the powers thus to subject lands held for public purposes to such assessments is indicated by the case of *Mayrhofer* v. *Board of Education,* 89 Cal. 110, [23 Am. St. Rep. 451, 26 Pac. 646], where an attempt was made to subject a schoolhouse erected by a public-school district to a mechanic's lien. It was there held that the state is not bound by the general words of a statute which will operate to trench upon its sovereign rights, or injuriously affect its capacity to perform its functions. The

principle is that public policy itself will deny and forbid the application of general laws to property so held in trust for public purposes, as public-school buildings, city or county municipal buildings, and the necessary land upon which they stand, because of the grave interference with necessary public functions, governmental or educational, which would thus result.  The private right of the individual must give way to the general good of all.  But the rule goes no further, and wherever lands, though owned by some public agent or mandatory of the government, school boards, counties or cities, penal or reform institutions, or institutions for the feeble-minded or insane, are not in use in the performance of a public function, such lands, in the absence of a constitutional or legislative restriction (such as we have seen does not exist in this state) are justly compelled to bear their part of the expense which goes directly to increase their values.  So it was declared in *San Diego* v. *Linda Vista Irr. Dist.*, 108 Cal. 189, [41 Pac. 291], where pueblo lands of the city of San Diego had been subjected to and sold under the lien of an irrigation district assessment.  And in *Witter* v. *Mission School District*, 121 Cal. 350, [66 Am. St. Rep. 33, 53 Pac. 905], where an attempt was made to enforce a street assessment against lots used for school purposes, while sustaining a demurrer because of the absence of facts here pleaded,—namely, that the lands were not in use for a public purpose,—after referring to *San Diego* v. *Linda Vista Irr. Dist.*, 108 Cal. 189, [41 Pac. 291], this court said: "So far as shown the lots in question may have school buildings upon them and may be used and occupied exclusively for school purposes, in which case we do not think this action could be maintained.  As a private owner, however, of land not used exclusively for school purposes, but held as an investment or from which to derive rentals, as property of an individual is held and owned, we see no reason why the lands of a school district should not be assessed for improvements the same as those of any other private owner."  That these rulings are in accord with the great weight of authority may be seen by reference to *City of Chicago etc.* v. *City of Chicago*, 207 Ill. 37, [69 N. E. 580] ; *State* v. *Robertson*, 24 N. J. L. 504; *School District* v. *Board of Improvements*, 65 Ark. 343, [46 S. W. 418] ; *Sioux City* v. *Ind. School District*, 55 Iowa, 150, [7 N. W. 488] ; *City of Atlanta* v. *First Presby-*

*terian Church,* 86 Ga. 737, [13 S. E. 252]; *Hassan* v. *City of Rochester,* 67 N. Y. 528; *Sewickley M. E. Church Appeal,* 165 Pa. 475, [30 Atl. 1007]; *Essex County* v. *City of Salem,* 153 Mass. 141, [26 N. E. 431]. A reading of these cases will disclose that in many of the states, upon the theory that, in the absence of express prohibition, even the state should bear its share of benefits for special assessments, it is held that property, although devoted to public use, is liable to such assessment. The rule in this state is, as above indicated, that such property when actually devoted to the public use is exempt; otherwise not.

The complaint in this action sufficiently pleads facts rendering the land in question liable to the assessment. Its ultimate liability, of course, must depend upon proof of the facts alleged, but the complaint was not obnoxious to demurrer, and the judgment is therefore reversed and the cause remanded, with directions to the trial court to overrule the demurrer and permit defendant to plead to the merits.

Lorigan, J., Sloss, J., McFarland, J., Shaw, J., and Angellotti, J., concurred.