STATE ex rel. FREEBOURN, Attorney General, Relator,
v. YELLOWSTONE COUNTY et al., Respondents.

(No. 7,910.)

(Submitted January 6, 1939.  Decided March 2, 1939.)

[88 Pac. (2d) 6.]

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. W. W. Wertz,* Special Assistant Attorney General, for Relator, submitted a brief; *Mr. Wertz* argued the cause orally.

*Mr. George S. Smith* and *Mr. Franklin A. Lamb,* respectively County Attorney and Assistant County Attorney of Yellowstone County, submitted a brief; *Mr. Smith* argued the cause orally.

HONORABLE CHARLES B. ELWELL, District Judge sitting in place of MR. JUSTICE MORRIS, delivered the opinion of the court.

This cause comes before this court upon an original proceeding for injunctive relief, based upon a complaint and petition for injunction, and upon an order to show cause and temporary injunction issued by this court. The respondents have filed their answer and also supporting affidavits. The facts are not in dispute.

By Chapter 118 of the Laws of the Eighth Legislative Assembly, 1903, establishment of a sub-experimental station of the Agricultural Experimental Station near Billings, Montana, was

provided for, and provision was also made for acquiring land for that purpose. Section 3 of that chapter provided: "That for the purpose of securing title to the land selected by them for said sub-station, the Governor and Secretary of State are hereby authorized and empowered to either use the land heretofore acquired by the State for the Eastern State Prison, near Billings and described as: [here follows a description of numerous lots and blocks], or if such land, in their judgment is not suitable for the purpose of such sub-experimental station, then they shall and are hereby empowered to convey such land described as aforesaid in exchange for such suitable tract of land for the sub-experimental station as they may deem of at least equal value."

The land for the Eastern State Prison had been acquired under an Act of the legislature of the session of 1893, page 194. The establishment of the Eastern State Prison had evidently been abandoned, although land had been secured therefor. Apparently the land for a prison site was traded, and there was acquired by the state of Montana, under Chapter 118, supra, a site for a sub-experimental station, described as the S½ SE¼ SE¼ of section five (5), Township one (1) South, Range Twenty-six (26) East, comprising twenty (20) acres, more or less.

The project for a sub-experimental station near Billings was also abandoned, and, in view of the abandonment of the project, the state legislature in 1907 passed legislation, which was included in Chapter 188 of the Laws of 1907. The portion dealing with the lands here in question is as follows: "The State Board of Land Commissioners is hereby empowered to sell and dispose of all lands acquired under and by virtue of the provisions of Chapter 118, Session Laws of 1903, upon the same terms and conditions as provided by law for the sale and disposition of all other state lands."

In 1913 a strip of land four hundred feet (400′) in width and extending across the S½ SE¼ SE¼ of section five (5) Township one (1) South, Range Twenty-six (26) East, immediately north of the south line thereof, was included in the O'Donnell

Drain Special Assessment District in Yellowstone county. Special drain assessments were levied against the land which belonged to the state, and subsequently the lands were offered for sale for delinquent drainage district assessments. In what year this happened we are not informed. Just prior to the initiation of this proceeding, Yellowstone county, acting through its board of county commissioners and county clerk and recorder, gave notice of application for tax deed, and, unless restrained, the county treasurer of that county will issue a tax deed to the state's land which is included in the drain district.

At the time of the creation of the O'Donnell Drain Special Assessment District in 1913, there was in effect an Act approved March 7, 1905, Chapter 106, Ninth Legislative Session, and appearing as sections 2403 to 2497 in the Revised Codes of 1907. Section 2443 of the 1907 Codes reads as follows: ''School and state lands shall be assessed their per cent apportioned for benefits, and the collection thereof shall be enforced as State and county taxes against lands are collected and enforced. School and State lands shall be included in all assessments for benefits the same as other lands, but the sum of all such drain taxes that may be assessed against any tract of school or state lands shall not aggregate a sum greater than fifty per cent of the price at which said lands are held by the State. Any amount apportioned and assessed upon school or state lands shall be reported by the county commissioners to the registrar of the State Land Office within ten days after the delivery of the assessment roll to the county treasurer. Said registrar of the State Land Office shall enter on the books of his office, against each description of such State lands, the amount of drain taxes assessed thereon, and shall certify the same to the Auditor who shall draw his warrant on the State Treasurer therefor, to be paid out of any funds in his hands not otherwise appropriated. Such amount shall be forwarded by the Registrar of the State Land Office to the County Commissioners on or before the fifteenth day of January next, and shall by him be applied in payment of such taxes. No deed shall issue for such lands until all such drain taxes are paid with interest at seven per cent.''

There was also included in the Act approved March 7, 1905, above cited, a section to which no reference was made by either party to this proceeding, which has some bearing on the proceeding. This provision became section 2451 of the Revised Codes of 1907, and reads in part as follows: "All drain taxes assessed under the provisions of this act shall be subject to the same interest and charges, and shall be collected in the same manner as State and other general taxes are collected, and collecting officers are hereby vested with the same power and authority in the collection of such taxes as are or may be conferred by law for collecting general taxes."

To bring the history of this law up to date, we find that the Drain District Law was amended by Chapter 144 of the Eleventh Legislative Assembly, 1909, but the two sections above mentioned were not changed. Again we find that by Chapter 147 of the Fourteenth Legislative Assembly, 1915, the Drain District Law was re-enacted and amended, but that the two sections above mentioned were re-enacted without any substantial change. However, the present Drain District Law was enacted in 1921, as Chapter 129, Laws of 1921, and section 2443 of the 1907 Codes, supra, was apparently replaced by what has become section 7326 of the 1935 Codes, as follows:

"Lien of assessments—payment assessments against state lands. From the time of the entry of said order, assessments for construction of new work and additional assessments and interest thereon shall be a lien upon the lands assessed, until paid. Any owner of land, or any corporation assessed for construction, may, at any time within thirty days after the confirmation of said report, pay into court the amount of the assessment against his land or any tract thereof, or against any such corporation. Said payment shall relieve said lands from the lien of said assessment, and said corporation from all liability on said assessment.

"Upon presentation to the state auditor of an order of the district court having jurisdiction of such drainage district, properly certified, the auditor shall draw his warrant on the treasurer on the common school fund in favor of the commissioners

of such drainage district for the total amount that may be assessed against any lands included in such district, the title to which is in the state of Montana, and upon the payment of such warrant such lands shall thereby be relieved from the lien theretofore created for such costs of construction.''

In Chapter 129 of the Laws of 1921 the section known as section 2451 of the Codes of 1907, supra, was replaced in part by a section which became section 7329 of the Codes of 1935, as follows: ''District taxes—how certified and collected. On or before the first Monday in September of each year the commissioners shall certify to each county treasurer of each county wherein the lands of the district are situate a correct list of all the district lands in such county, and the owners thereof, together with a statement of the amount of the total tax or assessment against said lands for district purposes, for that year, and the county treasurer of each county shall collect such taxes or assessments at the same time and in the same manner as county and state taxes.''

In order to get a complete picture of the legislation germane to this case, we will cite that portion of Chapter 129 of the Laws of 1921, which is now section 7364 of the 1935 Codes: ''Repealing clause—exceptions. Except as hereinafter provided, the provisions of chapter 147 of the session laws of 1915, chapter 144 of the session laws of 1909, sections 2403 to 2497, both inclusive, of the Revised Codes of Montana for 1907, and all acts and parts of acts in conflict herewith, are hereby repealed; provided, however, that where any drainage district shall have already been organized under the provisions of any of the laws in this section referred to, and shall have issued bonds, warrants, or other evidence of indebtedness, or entered into any contract of purchase or construction, nothing herein contained shall be construed as affecting the rights of the holders of said bonds, warrants, or other evidence of indebtedness, or of any person, persons, corporation, or association parties to such contract or contracts with said district.''

It appears that on October 28, 1915, the then Attorney General of Montana wrote an opinion holding that the provision for

payment by the state of these drain assessments was ineffective as being contrary to a specific provision of the Constitution. We are also informed that there is no such fund as the "common school fund," mentioned in section 7326 of the 1935 Codes, supra, and the latter law would be inoperative for that reason.

The land in question is not used for governmental purposes, and is leased to individuals for agricultural use. The legislature can authorize the inclusion of this land within special improvement districts, or drainage districts, and authorize assessments to the extent that the land is benefited. Such assessments are not taxes within the meaning of the constitutional and statutory prohibitions. (*City of Kalispell* v. *School District No. 5*, 45 Mont. 221, 122 Pac. 742, Ann. Cas. 1913D, 1101; *Toole County Irr. Dist.* v. *State*, 104 Mont. 420, 67 Pac. (2d) 989.)

It is a general rule, based upon public policy, that state lands are not the subject of tax deed proceedings. The reason for the rule is well placed upon the broad ground that the welfare of the entire state and the citizens thereof is involved, and that valuable rights of the people might be lost through malfeasance or nonfeasance of officers or employees of the state.

We might liken the taking of a tax deed against the state to a suit against the state. It is fundamental that a state may not be sued without its consent. (*Langford* v. *King*, 1 Mont. 33; *Fisk* v. *Cuthbert*, 2 Mont. 593; *State ex rel. Journal Pub. Co.* v. *Kenney*, 9 Mont. 389, 24 Pac. 96; *State ex rel. Robert Mitchell Furniture Co.* v. *Toole*, 26 Mont. 22, 66 Pac. 496, 55 L. R. A. 644, 91 Am. St. Rep. 386.) In effect, the application for a tax deed is an action *in rem*, to which all persons interested in the property in question are parties defendant. (*In re City of Mt. Vernon*, 147 Ill. 359, 35 N. E. 533, 23 L. R. A. 807.) Under our law as it now stands, the holder of a tax sale certificate can use this informal method of procedure, or can take the more formal method of bringing an action in the district court under sections 2215.1 et seq. of the 1935 Revised Codes. If the latter method were taken, the state would be a party in interest and

a necessary party defendant, and the objection would immediately arise that the state could not be made a party without its consent. It is true that the state can be made a party defendant to an action if that privilege is specifically granted by the state legislature, but the authorization must be plain and specific and cannot arise simply by implication. (*Sunset Oil Co.* v. *State of California*, (9th Cir.) 87 Fed. (2d) 972; *Federal Land Bank of Spokane* v. *Schermerhorn*, 155 Or. 533, 64 Pac. (2d) 1337; *Dougherty* v. *Vidal*, 37 N. M. 256, 21 Pac. (2d) 90; *Grande* v. *Casson*, 50 Ariz. 397, 72 Pac. (2d) 676.)

Likewise, in cases involving property such as is here involved, belonging to the state, the legislature may authorize the taking of a tax deed, either by the informal method here followed or in a formal action brought in the district court, but the authority so to do must be plain and specific and cannot be implied. All cases we have been able to find permitting the taking of tax deeds on public property not used for governmental purposes, have involved property of cities, counties, school districts, boards of university regents, etc., which do not possess the sovereignty of the state itself, and do not come under the rule that actions or proceedings cannot be had against the sovereign without its consent.

We will grant that the provisions of section 2443 of the Codes of 1907, supra, may be construed as authorizing the taking of a tax deed against the state for delinquent drain district assessments. However, in addition to this provision relating to state lands, section 2451 of the 1907 Codes, supra, contains the general provision for taking tax deeds for such delinquent assessments. This is the usual general provision found in connection with all laws relating to special improvement assessments, and contains no reference to state lands. (See secs. 5251.1 to 5277, 7240 of the Codes of 1935 for other such general provisions.)

Thus we have the special provisions of section 2443 of the 1907 Codes, and the general provisions of section 2451 of the same Codes. The special provisions of section 2443, Codes of 1907, have been repealed. The general provisions of section

2451, supra, have been continued in effect in what is now section 7329, Codes of 1935. It cannot very well be argued that the elimination of the special provision relating to state lands and the continuation of the general provisions of the same law could possibly continue in effect the special provisions, and we must conclude that the legislature intended to do away with that portion of section 2443 of the 1907 Codes relating to the enforcement of delinquent assessments against state lands.

This leaves two questions to be answered: First, is the right ▇ to take a tax deed against the state for delinquent drain district assessments such a right as the legislature can take away, in short, is it a vested property right, or is it simply a remedial right which may be taken away or changed? Second, if it can be taken away or changed, did the exceptions contained in the repealing clause, section 7364, Revised Codes of 1935, save that right?

We are satisfied that the right to take a tax deed against the state in cases like this, can be taken away by the legislature, and that it is nothing more than a remedial right. It is not a vested right, but simply the grant of a special remedial privilege that can be revoked at will, just as a law permitting the state to be sued is not an absolute right but the grant of a privilege revocable at will. (*Owens* v. *State Highway Dept.,* 165 S. C. 180, 163 S. E. 473; *Duke Power Co.* v. *South Carolina Tax Com.,* (4th Cir.) 81 Fed. (2d) 513; *Sunset Oil Co.* v. *State of California,* (9th Cir.) 87 Fed. (2d) 972; *Oliver American T. Co.* v. *Government of the United States of Mexico,* (2d Cir.) 5 Fed. (2d) 659; *Baltzer* v. *State of North Carolina,* 161 U. S. 240, 16 Sup. Ct. 500, 40 L. Ed. 684; *Beers* v. *State of Arkansas,* 20 How. 527, 15 L. Ed. 991.)

We are likewise satisfied that the right to take a tax deed ▇ on state lands was not saved by the exceptions contained in the repealing clause, section 7364, Codes of 1935, and that the exceptions apply only to the contractual relations existing between the drain district and the purchasers of bonds and warrants, and also parties who had sold supplies and materials to

the district or who had done work of construction within the district.

There being no specific authorization for the taking of a tax deed upon state lands in this instance, a permanent writ of injunction will issue as prayed for.

ASSOCIATE JUSTICES STEWART and ERICKSON concur.

MR. CHIEF JUSTICE JOHNSON:

I concur fully in the majority opinion, but wish briefly to summarize the holding in view of the misconceptions expressed by the dissenting opinion.

The majority opinion holds that section 2443 of the 1907 Codes, providing that the collection of drain assessments shall be enforced as state and county taxes against lands are collected and enforced, may be construed as authorizing the taking of tax deeds as against the state, but that it was repealed by the 1921 legislature, and that as between the state and a political subdivision (and not as between the state and a bona fide purchaser for value at tax sale), there is no question of vested interest which would prevent the repeal from taking effect in this instance.

In the dissent it is said: "It shocks me to think that, when a person takes a bond or obligation of a drain district, or enters into a contract with it for the performance of a certain work or the furnishing of supplies, when the law provides that he must look to the assessment for payment of the obligation and when the payment of the assessments may be compelled by a sale of the land, the legislature has the right thereafter to repeal the law so that collection of the assessments cannot be enforced."

The implication is obvious that the majority opinion has that result. I have examined the record from start to finish and have found no suggestion anywhere, except in the dissenting opinion, that any bond or obligation of the district is outstanding or any contract for work or supplies unliquidated. There is absolutely no such element in this case; the sole question is whether, nearly eighteen years after the repeal of the section

in question, a subdivision of the state may still take the state's property by tax deed.

The question is not whether the state should refuse to pay for the drainage improvement of its property. The question is simply whether, if the executive or legislative departments fail to see that those assessments are paid, the judicial department shall penalize all the people of the state by permitting the unauthorized taking of state property by tax deed.

Equitably, the assessments should be paid, either by appropriation for that purpose, or by a statute authorizing the taking of a tax deed. It is unthinkable that the legislature would have refused to provide payment by the one mode or the other, if the interested parties had properly brought the matter to its attention. But even in default of such action by the interested parties and the legislature, the courts cannot themselves legislate a remedy. The majority opinion does no more than express that fact, and no more can properly be read into its decision.

Mr. Justice Angstman, Dissenting:

At the time of the creation of the Drain Special Assessment District in question there were in effect an Act approved March 7, 1905, being Chapter 106, Ninth Legislative Session, and sections numbered 2403 to 2497 of the Revised Codes of 1907. Section 2443 of the 1907 Codes reads in part as follows: "School and state lands shall be assessed their per cent apportioned for benefits, and the collection thereof shall be enforced as State and county taxes against lands are collected and. enforced." The plain wording of this section is ample authority to warrant the county in subjecting the lands in question to tax deed proceedings if that section still governs.

The balance of the above section simply treats of the method by which the legislature directed the assessments to be paid. The directions relating to the method of payment were never intended to be the exclusive method of collecting the assessments. If that were so, then there would have been no purpose in the

provision that the collection shall be enforced as state and county taxes are collected and enforced.

There is no constitutional objection against this interpretation of the statute. These are not lands granted by Congress under the Enabling Act, nor are they lands acquired by gift, grant or devise, and hence are not subject to the provisions of sections 1 and 2 of Article XVII of the Constitution as to which a different rule, of course, would apply. These are public lands falling within section 3 of Article XVII, supra, which provides: "All other public lands may be disposed of in such manner as may be provided by law."

Also, the lands here involved are not used for governmental purposes, and hence are not subject to the general rule prohibiting such lands from being taken by tax deed proceedings. The lands here involved are held and owned by the state in its proprietary capacity—are not school lands, and it is competent for the legislature to provide, as it has, that they may be subjected to tax deed proceedings for failure to pay benefit assessments. (*Conley* v. *Hawley,* 2 Cal. (2d) 23, 38 Pac. (2d) 408; *City Street Imp. Co.* v. *Regents of the University,* 153 Cal. 776, 96 Pac. 801, 18 L. R. A. (n. s.) 451; *Blythe* v. *City of Tulsa,* 172 Okl. 586, 46 Pac. (2d) 310; *School District* v. *Board of Improvement,* 65 Ark. 343, 46 S. W. 418; *In re Auditor General,* 199 Mich. 489, 165 N. W. 771.) The reason for the rule was well stated in the case of *City Street Imp. Co.* v. *Regents of the University,* supra, as follows: "The principle is well established that, where any of such lands are not directly and necessarily used for a public purpose, they may be subjected to the payment of special assessments for benefits. And this is in consonance with justice and equity; for, to assess certain lot owners upon a street for all the cost of the work, part of which is for the benefit of a public institution, is to enhance the value of the university property at the expense of the few, instead of by taxation upon all the people at the expense of all. So it is said in *Hassan* v. *City of Rochester,* supra [67 N. Y. 528]: 'A different rule would compel individual lot owners to pay assessments levied for improvements which were of benefit to

the state lands without any adequate advantage, and in many instances impose a burden which would be extremely onerous and produce great injustice.' ''

The case of *City of Kalispell* v. *School Dist.*, 45 Mont. 221, 122 Pac. 742, Ann. Cas. 1913D, 1101, is not applicable here, because there the property in question was devoted exclusively to public school purposes, and therefore was being used for a governmental purpose.

The case of *Toole County Irr. Dist.* v. *State*, 104 Mont. 420, 67 Pac. (2d) 989, is also distinguishable, for in that case school funds, which under the Constitution should forever remain inviolate, had been invested in the property involved. That fact necessitated a different result because of constitutional provisions not involved here. Moreover, the statute there being considered simply made the assessment ''a first and prior lien on the land against which levied, to the same extent and with like force and effect as taxes levied for state and county purposes.'' (Rev. Codes, sec. 7213.) That statute did not deal specifically with the question of the method of enforcing the lien as does section 2443, Revised Codes of 1907. Furthermore, what was said in that case regarding the enforcement of the lien was in the nature of *dictum*, because that question was not involved in the case. The only purpose of that action was to declare that irrigation assessments constituted valid liens upon lands owned by the state.

A case pointing to the solution of the question here involved is that of *State ex rel. Malott* v. *Board of County Commrs.*, 89 Mont. 37, 296 Pac. 1, 18, where the court said: ''But, if a loan is made of the school funds upon farm lands, the lands are still subject to taxation, *and the state of Montana is obliged to protect its loan by the payment of the taxes levied against the land, or suffer the loss of its security through the taking of a tax deed.*''

The majority opinion states: ''We will grant that the provisions of section 2443 of the Codes of 1907, supra, may be construed as authorizing the taking of a tax deed against the state for delinquent drain district assessments.'' But immediately

preceding that statement the majority said: "All cases we have been able to find permitting the taking of tax deeds on public property not used for governmental purposes, have involved property of cities, counties, school districts, boards of university regents, etc., which do not possess the sovereignty of the state itself, and do not come under the rule that actions or proceedings cannot be had against the sovereign without its consent." My associates have overlooked the case of *Conley* v. *Hawley*, 2 Cal. (2d) 23, 38 Pac. (2d) 408. That case dealt with state-owned property, and the court applied the same rule to it as to city, county and school district property not used for governmental purposes.

The argument against suing the state without its consent is of no avail here. If the procedure provided for taking tax deeds is equivalent to an action *in rem*, and if, as here used, it amounts to a suit against the state, the complete answer to the contention is that the state by section 2443 has consented thereto. My associates take the view, however, that while section 2443 would permit the sale of state lands for delinquent drain assessments—and this admission would also apply to Chapter 147, Laws of 1915, containing the same language—a change was wrought by the 1921 amendments. I think my associates are in error, first, in supposing that it is competent for the legislature to fritter away the right to take a tax deed under the mere assertion that it is a remedial and not a vested right. If it can withhold the right to enforce payment of assessments against state-owned lands, it can for the same reason withhold the right as against lands owned by individuals. If the right is remedial in the one case, it is in the other.

Let us see where the majority opinion takes us. When the drain district was created section 2446, Revised Codes of 1907, was in effect, reading in part: "Within ten ·days after the letting of contracts, and in case of an appeal, then forthwith after such appeal shall have been decided, the county drain commissioner shall make a computation of the entire cost of such drain, which shall include all the expenses of locating, establishing and constructing the same, including the commis-

sioner's fees, cost of survey, fees and expenses of special commissioners or jury, and the amount of contracts for construction, and interest on the costs, fees, expenses and charges for construction of said drain when the taxes assessed for the payment of same shall be paid in more than one year; also the cost of appeal in case the assessment of benefits made by the county drain commissioner shall not be sustained, and all other expenses, and he shall add the whole into a gross sum to cover contingent expenses, and the entire sum so ascertained shall be deemed to be the cost of construction of such drain.''

And section 2447 provided: ''The county drain commissioner shall thereupon make a special assessment roll for such drain for each district or districts and city, affected thereby, which roll shall be designated '(giving the name) drain special assessment roll,' and he shall enter therein a correct description of the tracts, parcels or subdivisions of land benefited by such drain, as provided herein and place opposite each description the amount of the per cent heretofore determined upon by him or by the board of review, as the case may be. He shall also enter thereon the amount of the per cent apportioned to such district or districts and any city or town, and in case such amount be payable in installments as provided in this Act, he shall also enter thereon a memorandum of the installments thereof and of the year or years when such installments shall be spread; and shall add a certificate in writing of his determination made at the time and place of letting whether the taxes assessed for benefits shall be paid in one or more years. Such rolls shall be dated and signed by said drain commissioner and filed on or before the first day of August in each year, in the office of the clerk of the county or of any city or town in which such lands may be located.''

To the same effect is section 1, Article IV, Chapter 144, Laws of 1909. Thus it is seen that before any assessment could be made by a drain district, debts must have been incurred by the letting of contracts.

Chapter 147 of the Laws of 1915 contains very similar provisions. (See Articles III and IV of Chapter 147.)

It shocks me to think that, when a person takes a bond or obligation of a drain district, or enters into a contract with it for the performance of certain work or the furnishing of supplies, when the law provides that he must look to the assessment for payment of the obligation and when the payment of the assessments may be compelled by a sale of the land, the legislature has the right thereafter to repeal the law so that collection of the assessments cannot be enforced. If the holders of the obligations have not a vested right to resort to the laws in effect at the time the obligations were taken, then there is no such thing as a vested right. I think any attempt to change the law in this respect would impair the obligation of contracts contrary to section 11, Article III of the Constitution. But it seems to me clear that the legislature was particularly careful not to change the law as against those to whom the drain district was obligated.

It does not appear just when the assessments in question were levied. It does appear that the district was created in 1913 and concededly the law was not changed until in 1921. It is fair to assume that the assessments were levied at about the time of the creation of the district, else there would have been no occasion to create the district. One thing we are certain about, and that is that the state of Montana has never paid anything on the assessments further than to make an invalid appropriation in 1907 and repeated verbatim in 1915. (See vol. 6, Opinions of Attorney General, 266.) An equally faulty appropriation was again made in 1921, because it was drawn against a fund existing only in imagination. (Sec. 7326, Rev. Codes.)

I think my associates are in error in holding that the legislature intended by Chapter 129, Laws of 1921, to change the law with respect to the sale of lands of the state for delinquent taxes as to districts already created and obligated under contracts. Section 7364, Revised Codes, which was a part of Chapter 129, Laws of 1921, negatives any such purpose. It provides: "Except as hereinafter provided, the provisions of Chapter 147 of the session laws of 1915, Chapter 144 of the

session laws of 1909, sections 2403 to 2497, both inclusive, of the Revised Codes of Montana for 1907, and all acts and parts of acts in conflict herewith, are hereby repealed; provided, however, that where any drainage district shall have already been organized under the provisions of any of the laws in this section referred to, and shall have issued bonds, warrants, or other evidence of indebtedness, or entered into any contract of purchase or construction, nothing herein contained shall be construed as affecting the rights of the holders of said bonds, warrants, or other evidence of indebtedness, or of any person, persons, corporation, or association parties to such contract or contracts with said district." This is a positive declaration by the legislature that the laws existing when contracts were let constitute a part of the contracts. It is a positive statement by it that the holders of bonds, warrants, or evidence of indebtedness, and persons contracting with the district have a vested right which it saw fit not to disturb. My associates attempt to extricate themselves from the consequences of this section by the simple statement that the exceptions contained in section 7364 "only apply to the contractual relations existing between the drain district and the purchasers of bonds and warrants, and also parties who had sold supplies and materials to the district or who had done work of construction within the district." Those are the very rights that are sought to be protected by the sale of the lands for the delinquent assessments. It is folly to suppose that the county is the one seeking to profit by a sale of the lands. The county in applying for a tax deed is merely acting as the agent or trustee of the drain district and for the benefit of holders of bonds, warrants, evidences of debt and parties who have contracted with the district.

Under section 2208.1, Revised Codes, the county, after it obtains the deed, must offer the property for sale at public auction, and under section 2208.2 it must credit the proceeds of the sale to the extent of the assessment, penalty and interest, to the drain district. In doing these things the county is but enforcing the landowner's obligation to the drain district and its creditors. The county, to be sure, gets the excess, if any,

but it is fair to assume that there will be no excess. The fact that the land was struck off to the county is some evidence that the land had no value over and above the assessment due, otherwise it is fair to assume that there would have been other bidders for the property. Also, we must presume that official duty has been regularly performed. (Subd. 15, sec. 10606, Rev. Codes.) We must presume, in the absence of proof to the contrary, that the proper officers of the state voluntarily chose to permit the lands in question to be sold for delinquent assessments rather than to appropriate or seek a valid appropriation of money with which to pay the assessments. That choice would indicate that the land had no value over and above the amount of the assessments. Hence it is my conclusion that section 7364, supra, in plain and simple language recognizes the holders of obligations of the district as possessing vested rights which are expressly reserved to them.

It seems clear, then, to me that by section 7364 the legislature did not repeal section 2443 as to obligations incurred by the district before the passage of section 7364, but in language so plain that I do not see how it can be misunderstood, it declared that those with whom the district had contracted had vested rights which it expressly saved to them. The legislative thought on the subject, entertained by the same assembly, is further evidenced by the fact that it passed section 7358, reading: ''No bonds or other money obligations issued by any drainage district shall be adversely affected by any subsequent change in assessments of benefits.'' Again, if section 7364 does not save rights under section 2443, I still think that other provisions of Chapter 129, Laws of 1921, show conclusively that the rule stated in section 2443 to the effect that state-owned lands are subject to assessments the collection of which can be enforced as state and county taxes, is still the law, and has not been changed by Chapter 129, Laws of 1921.

My associates take the view that a change was wrought because section 2443, Revised Codes of 1907, was a special statute, whereas section 2451 of the same Codes was a general statute, and that only the general was retained by what is now section

7329, and the special provision was amended by what is now section 7326. My associates have overlooked other provisions of the 1921 statutes which refute the position taken by them. Thus the very first section of Chapter 129, Laws of 1921, which is now section 7265, contains this provision: "8. Any lands, the title to which is in the state of Montana, and which are within the boundaries of any drainage district heretofore created, or which may hereafter be created, may be included in any such drainage district in the same manner as is by law provided for adding other lands to drainage districts whenever it is found necessary to include lands in drainage districts as by the preceding paragraphs provided. Any and all copies of petitions or notices required by law to be served on account of such lands being included in such drainage districts, shall be served on the president of the board having control of such lands in the same manner as is hereinafter provided for the service of petitions and notices on other owners of lands in the district in which said lands are situated." The last sentence in that paragraph shows definitely that wherever elsewhere in the Act petitions or notices are required to be served on landowners, the state is included without any special provision being made as to the state.

Section 7326 provides as follows:

"From the time of the entry of said order, assessments for construction of new work and additional assessments and interest thereon shall be a lien upon the lands assessed, until paid. Any owner of land, or any corporation assessed for construction, may, at any time within thirty days after the confirmation of said report, pay into court the amount of the assessment against his land or any tract thereof, or against any such corporation. Said payment shall relieve said lands from the lien of said assessment, and said corporation from all liability on said assessment.

"Upon presentation to the state auditor of an order of the district court having jurisdiction of such drainage district, properly certified, the auditor shall draw his warrant on the treasurer on the common school fund in favor of the commis-

sioners of such drainage district for the total amount that may be assessed against any lands included in such district, the title to which is in the state of Montana, and upon the payment of such warrant such lands shall thereby be relieved from the lien theretofore created for such costs of construction.''

The last paragraph of this section makes it clearly apparent that the levy of an assessment constitutes a lien upon the state's land in the district. If that were not so there would have been no occasion to attempt to make provision to relieve the land of the lien.

How did the land of the state become subject to a lien? The answer is found in the first paragraph of the above section. It was accomplished by general language covering all lands and all assessments. It took no special language or polished phrases to place a lien upon state lands as distinguished from other lands. Section 7329 in like manner provides for the collection of the assessments against *all* the lands and the owners thereof at the same time and in the same manner as county and state taxes. That language is all-inclusive. It plainly covers the state-owned lands as well as others. Another section of the statute not referred to by my associates is section 7331, which reads: ''The rules of law applying to the collection of taxes and sale of lands for taxes shall, unless in conflict with this act, apply to the collection and sale of lands for drainage assessments, and delinquent sales of land for unpaid taxes and assessments shall be made in the same manner as for state and county taxes in the respective counties where such lands are situate, and the right of redemption shall in all cases be made the same as in cases where lands are sold for state or county taxes. Such drainage district shall be entitled to the benefit of all penalties and interest upon delinquent district assessments.'' That section but emphasizes what was already stated in section 7329 concerning the method of collecting the assessments.

But my associates place great emphasis upon the right of the state to hide behind its prerogative of immunity from suit without its consent. But the legislature in unmistakable language waived the right of immunity from suit by enacting section

7357, reading: "Each and every sum assessed for construction, for additional assessment, or for repairs against any land or against any corporation, as soon as such assessment is confirmed by the court, shall be and is declared to be a judgment of the district court, in favor of said drainage district and against said land or corporation, and unless some other method of collection is herein provided, shall be collected in the same manner as any other money judgment is collected; provided, that whenever said assessment is a lien upon land, it shall only be collected out of said land on which it is a lien." It should be noted that it applies to "each and every sum assessed," and against "any land." There was no object or purpose of that section of the statute so far as lands owned by individuals are concerned, because as to them the laws already provided that an ad valorem tax has the force and effect of a judgment. (Sec. 2152, Rev. Codes.) Sections 7329 and 7331 concededly had already adopted section 2152 as to privately owned lands. The obvious purpose of section 7357 was to make the assessment of state lands a judgment against the state and thus to waive the state's immunity from suit as to the class of lands we are here considering. Section 7357 contains this clause, "unless some other method of collection is herein provided." That clause has to do with an assessment which is not a lien upon property as provided in section 7332 and illustrated by the case of *State ex rel. Valley Center Drain Dist.* v. *Board of County Commrs.,* 100 Mont. 581, 51 Pac. (2d) 635. That clause cannot be said to apply to state-owned lands not used for governmental purposes where no other method of collection was provided as here.

I think also the rule deemed applicable by me is reasonable and just. I know of no good reason why state-owned lands used for exactly the same purpose as privately owned lands, and receiving exactly the same benefits should not bear their proportionate share of the cost of drainage improvements. The legislature by providing for an enforceable obligation against the state for its share of the cost of these improvements but followed the dictates of simple justice so well summarized by

Abraham Lincoln in his first inaugural address, when he said: "It is as much the duty of Government to render prompt justice against itself in favor of citizens as it is to administer the same between private individuals." The drain district obligations must be paid. To the extent that the state neglects or refuses to pay its share, must the individual owners of land in the district pay more than their just share. Strained construction of statutes is expressly condemned by the legislature. (Sec. 4, Rev. Codes.) If ever it is permissible it ought not to be done to aid in accomplishing an unjust result.

I think the writ applied for should be denied.